# NOTE

| FHA CASE NO. |
| --- |
| **413-4685544-703** |

**August 21, 2007**
[Date]

**851 E. Sandusky Ave
Bellefontaine, OH  43311**
[Property Address]

**1.   PARTIES**

"Borrower" means each person signing at the end of this Note, and the person's successors and assigns.  "Lender" means **Taylor, Bean & Whitaker Mortgage Corp.**

and its successors and assigns.

**2.   BORROWER'S   PROMISE   TO PAY; INTEREST**

In return for a loan received from Lender, Borrower promises to pay the principal sum of **One Hundred Thirty Four Thousand Nine Hundred Ninety Five and no/100** Dollars (U.S. $ **134,995.00** ), plus interest, to the order of Lender.  Interest will be charged on unpaid principal, from the date of disbursement of the loan proceeds by Lender, at the rate of **Six and Seven Eighths** percent ( **6.8750** %) per year until the full amount of principal has been paid.

**3.   PROMISE  TO PAY SECURED**

Borrower's promise to pay is secured by a mortgage, deed of trust or similar security instrument that is dated the same date as this Note and called the "Security Instrument." The Security Instrument protects the Lender from losses which might result if Borrower defaults under this Note.

**4.   MANNER  OF PAYMENT**

**(A)   Time**

Borrower shall make a payment of principal and interest to Lender on the first day of each month beginning on **October 01, 2007** .  Any principal and interest remaining on the first day of **September 2037** , will be due on that date, which is called the "Maturity Date."

**(B)   Place**

Payment shall be made at **Taylor, Bean & Whitaker Mortgage Corp., 1417 North Magnolia Ave, Ocala, FL 34475** or at such other place as Lender may designate in writing by notice to Borrower.

**(C)   Amount**

Each monthly payment of principal and interest will be in the amount of U.S. $ **886.82** . This amount will be part of a larger monthly payment required by the Security Instrument, that shall be applied to principal, interest and other items in the order described in the Security Instrument.

**MULTISTATE FHA FIXED RATE NOTE**

ITEM T6432L1 (9606R)

*(Page 1 of 3 pages)*

6/96

GREATLAND ■
To Order Call: 1-800-530-9393 ☐Fax 616-791-1131



*0231541936211*

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in pages 1 through 3 of this Note.

| | |
|---|---|
| ____________________(Seal) -Borrower<br>Clinton M. Hill III | ____________________(Seal) -Borrower |
| ____________________(Seal) -Borrower | ____________________(Seal) -Borrower |
| ____________________(Seal) -Borrower | ____________________(Seal) -Borrower |

*[Sign Original Only]*

After Recording Return To:
**ACS LIONHEART TITLE**
**111 W. SIXTH STREET**
**MARYSVILLE** , OH 43040

──────────── [Space Above This Line For Recording Data] ────────────

# OPEN-END MORTGAGE

| FHA CASE NO. |
| --- |
| **413-4685544-703** |

**MIN: 100029500019362114**

THIS MORTGAGE ("Security Instrument") is given on **August 21, 2007**
The mortgagor is **Clinton M. Hill, III**

("Borrower"). This Security Instrument is given to
Mortgage Electronic Registration Systems, Inc. ("MERS") (solely as nominee for Lender, as hereinafter defined, and
Lender's successors and assigns), as beneficiary. MERS is organized and existing under the laws of Delaware, and has an
address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS. **Taylor, Bean & Whitaker Mortgage Corp.**

("Lender") is organized and existing
under the laws of **FL** , and
has an address of **1417 North Magnolia Ave, Ocala, FL 34475**

Borrower owes Lender the principal sum of **One Hundred Thirty Four Thousand Nine Hundred Ninety Five and no/100**
Dollars (U.S. $ **134,995.00** ).
This debt is evidenced by Borrower's note dated the same date as this Security Instrument ("Note"), which provides for
monthly payments, with the full debt, if not paid earlier, due and payable on **September 01, 2037**
This Security Instrument secures to Lender: (a) the repayment of the debt evidenced by the Note, with interest, and all
renewals, extensions and modifications of the Note; (b) the payment of all other sums, with interest, advanced under
paragraph 7 to protect the security of this Security Instrument; and (c) the performance of Borrower's covenants and
agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey
to MERS (solely as nominee for Lender and Lender's successors and assigns) and to the successors and assigns of MERS the
following described property located in **Logan** County, Ohio:

**See Attached Exhibit A.**

**OHIO FHA MORTGAGE**

ITEM T9690L1 (0205)—**MERS**

*(Page 1 of 7 pages)*

6/96

GREATLAND ■
To Order Call: 1-800-530-9393 □ Fax: 616-791-1131



*0243131936211*

which has the address of                 **851 E. Sandusky Ave**
                                         [Street]

**Bellefontaine**          , Ohio         **43311**           ("Property Address");
[City]                               [Zip Code]

    TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument; but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

    BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

    THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

    **1.**   **Payment of Principal, Interest and Late Charge.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and late charges due under the Note.

    **2.**   **Monthly Payment of Taxes, Insurance, and Other Charges.** Borrower shall include in each monthly payment, together with the principal and interest as set forth in the Note and any late charges, a sum for (a) taxes and special assessments levied or to be levied against the Property, (b) leasehold payments or ground rents on the Property, and (c) premiums for insurance required under paragraph 4. In any year in which the Lender must pay a mortgage insurance premium to the Secretary of Housing and Urban Development ("Secretary"), or in any year in which such premium would have been required if Lender still held the Security Instrument, each monthly payment shall also include either: (i) a sum for the annual mortgage insurance premium to be paid by Lender to the Secretary, or (ii) a monthly charge instead of a mortgage insurance premium if this Security Instrument is held by the Secretary, in a reasonable amount to be determined by the Secretary. Except for the monthly charge by the Secretary, these items are called "Escrow Items" and the sums paid to Lender are called "Escrow Funds."

    Lender may, at any time, collect and hold amounts for Escrow Items in an aggregate amount not to exceed the maximum amount that may be required for Borrower's escrow account under the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §2601 et seq. and implementing regulations, 24 CFR Part 3500, as they may be amended from time to time ("RESPA"), except that the cushion or reserve permitted by RESPA for unanticipated disbursements or disbursements before the Borrower's payments are available in the account may not be based on amounts due for the mortgage insurance premium.

    If the amounts held by Lender for Escrow Items exceed the amounts permitted to be held by RESPA, Lender shall account to Borrower for the excess funds as required by RESPA. If the amounts of funds held by Lender at any time are not sufficient to pay the Escrow Items when due, Lender may notify the Borrower and require Borrower to make up the shortage as permitted by RESPA.

    The Escrow Funds are pledged as additional security for all sums secured by this Security Instrument. If Borrower tenders to Lender the full payment of all such sums, Borrower's account shall be credited with the balance remaining for all installment items (a), (b), and (c) and any mortgage insurance premium installment that Lender has not become obligated to pay to the Secretary, and Lender shall promptly refund any excess funds to Borrower. Immediately prior to a foreclosure sale of the Property or its acquisition by Lender, Borrower's account shall be credited with any balance remaining for all installments for items (a), (b), and (c).

    **3.**   **Application of Payments.** All payments under paragraphs 1 and 2 shall be applied by Lender as follows:

    FIRST, to the mortgage insurance premium to be paid by Lender to the Secretary or to the monthly charge by the Secretary instead of the monthly mortgage insurance premium;

    SECOND, to any taxes, special assessments, leasehold payments or ground rents, and fire, flood and other hazard insurance premiums, as required;

    THIRD, to interest due under the Note;

**OHIO FHA MORTGAGE**

FOURTH, to amortization of the principal of the Note; and

FIFTH, to late charges due under the Note.

**4. Fire, Flood and Other Hazard Insurance.** Borrower shall insure all improvements on the Property, whether now in existence or subsequently erected, against any hazards, casualties, and contingencies, including fire, for which Lender requires insurance. This insurance shall be maintained in the amounts and for the periods that Lender requires. Borrower shall also insure all improvements on the Property, whether now in existence or subsequently erected, against loss by floods to the extent required by the Secretary. All insurance shall be carried with companies approved by Lender. The insurance policies and any renewals shall be held by Lender and shall include loss payable clauses in favor of, and in a form acceptable to, Lender.

In the event of loss, Borrower shall give Lender immediate notice by mail. Lender may make proof of loss if not made promptly by Borrower. Each insurance company concerned is hereby authorized and directed to make payment for such loss directly to Lender, instead of to Borrower and to Lender jointly. All or any part of the insurance proceeds may be applied by Lender, at its option, either (a) to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order in paragraph 3, and then to prepayment of principal, or (b) to the restoration or repair of the damaged Property. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments which are referred to in paragraph 2, or change the amount of such payments. Any excess insurance proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

In the event of foreclosure of this Security Instrument or other transfer of title to the Property that extinguishes the indebtedness, all right, title and interest of Borrower in and to insurance policies in force shall pass to the purchaser.

**5. Occupancy, Preservation, Maintenance and Protection of the Property; Borrower's Loan Application; Leaseholds.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within sixty days after the execution of this Security Instrument (or within sixty days of a later sale or transfer of the Property) and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender determines that requirement will cause undue hardship for Borrower, or unless extenuating circumstances exist which are beyond Borrower's control. Borrower shall notify Lender of any extenuating circumstances. Borrower shall not commit waste or destroy, damage or substantially change the Property or allow the Property to deteriorate, reasonable wear and tear excepted. Lender may inspect the Property if the Property is vacant or abandoned or the loan is in default. Lender may take reasonable action to protect and preserve such vacant or abandoned Property. Borrower shall also be in default if Borrower, during the loan application process, gave materially false or inaccurate information or statements to Lender (or failed to provide Lender with any material information) in connection with the loan evidenced by the Note, including, but not limited to, representations concerning Borrower's occupancy of the Property as a principal residence. If this Security Instrument is on a leasehold, Borrower shall comply with the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and fee title shall not be merged unless Lender agrees to the merger in writing.

**6. Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of any part of the Property, or for conveyance in place of condemnation, are hereby assigned and shall be paid to Lender to the extent of the full amount of the indebtedness that remains unpaid under the Note and this Security Instrument. Lender shall apply such proceeds to the reduction of the indebtedness under the Note and this Security Instrument, first to any delinquent amounts applied in the order provided in paragraph 3, and then to prepayment of principal. Any application of the proceeds to the principal shall not extend or postpone the due date of the monthly payments, which are referred to in paragraph 2, or change the amount of such payments. Any excess proceeds over an amount required to pay all outstanding indebtedness under the Note and this Security Instrument shall be paid to the entity legally entitled thereto.

**7. Charges to Borrower and Protection of Lender's Rights in the Property.** Borrower shall pay all governmental or municipal charges, fines and impositions that are not included in paragraph 2. Borrower shall pay these obligations on time directly to the entity which is owed the payment. If failure to pay would adversely affect Lender's interest in the Property, upon Lender's request Borrower shall promptly furnish to Lender receipts evidencing these payments.

If Borrower fails to make these payments or the payments required by paragraph 2, or fails to perform any other covenants and agreements contained in this Security Instrument, or there is a legal proceeding that may significantly affect Lender's rights in the Property (such as a proceeding in bankruptcy, for condemnation or to enforce laws or regulations), then Lender may do and pay whatever is necessary to protect the value of the Property and Lender's rights in the Property, including payment of taxes, hazard insurance and other items mentioned in paragraph 2.

Any amounts disbursed by Lender under this paragraph shall become an additional debt of Borrower and be secured by this Security Instrument. These amounts shall bear interest from the date of disbursement at the Note rate, and at the option of Lender shall be immediately due and payable.

**OHIO FHA MORTGAGE**

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender; (b) contests in good faith the lien by, or defends against enforcement of the lien in, legal proceedings which in the Lender's opinion operate to prevent the enforcement of the lien; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which may attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Borrower shall satisfy the lien or take one or more of the actions set forth above within 10 days of the giving of notice.

     **8.**   **Fees.** Lender may collect fees and charges authorized by the Secretary.

     **9.**   **Grounds for Acceleration of Debt.**

       **(a) Default.** Lender may, except as limited by regulations issued by the Secretary in the case of payment defaults, require immediate payment in full of all sums secured by this Security Instrument if:

         (i) Borrower defaults by failing to pay in full any monthly payment required by this Security Instrument prior to or on the due date of the next monthly payment, or

         (ii) Borrower defaults by failing, for a period of thirty days, to perform any other obligations contained in this Security Instrument.

       **(b) Sale Without Credit Approval.** Lender shall, if permitted by applicable law (including section 341(d) of the Garn-St. Germain Depository Institutions Act of 1982, 12 U.S.C. 1701j-3(d)) and with the prior approval of the Secretary, require immediate payment in full of all sums secured by this Security Instrument if:

         (i) All or part of the Property, or a beneficial interest in a trust owning all or part of the Property, is sold or otherwise transferred (other than by devise or descent), and

         (ii) The Property is not occupied by the purchaser or grantee as his or her principal residence, or the purchaser or grantee does so occupy the Property, but his or her credit has not been approved in accordance with the requirements of the Secretary.

       **(c) No Waiver.** If circumstances occur that would permit Lender to require immediate payment in full, but Lender does not require such payments, Lender does not waive its rights with respect to subsequent events.

       **(d) Regulations of HUD Secretary.** In many circumstances regulations issued by the Secretary will limit Lender's rights, in the case of payment defaults, to require immediate payment in full and foreclose if not paid. This Security Instrument does not authorize acceleration or foreclosure if not permitted by regulations of the Secretary.

       **(e) Mortgage Not Insured.** Borrower agrees that if this Security Instrument and the Note are not determined to be eligible for insurance under the National Housing Act within **eight months**

from the date hereof, Lender may, at its option require immediate payment in full of all sums secured by this Security Instrument. A written statement of any authorized agent of the Secretary dated subsequent to **eight months**                     from the date hereof, declining to insure this Security Instrument and the Note, shall be deemed conclusive proof of such ineligibility. Notwithstanding the foregoing, this option may not be exercised by Lender when the unavailability of insurance is solely due to Lender's failure to remit a mortgage insurance premium to the Secretary.

    **10.**   **Reinstatement.** Borrower has a right to be reinstated if Lender has required immediate payment in full because of Borrower's failure to pay an amount due under the Note or this Security Instrument. This right applies even after foreclosure proceedings are instituted. To reinstate the Security Instrument, Borrower shall tender in a lump sum all amounts required to bring Borrower's account current including, to the extent they are obligations of Borrower under this Security Instrument, foreclosure costs and reasonable and customary attorneys' fees and expenses properly associated with the foreclosure proceeding. Upon reinstatement by Borrower, this Security Instrument and the obligations that it secures shall remain in effect as if Lender had not required immediate payment in full. However, Lender is not required to permit reinstatement if: (i) Lender has accepted reinstatement after the commencement of foreclosure proceedings within two years immediately preceding the commencement of a current foreclosure proceeding, (ii) reinstatement will preclude foreclosure on different grounds in the future, or (iii) reinstatement will adversely affect the priority of the lien created by this Security Instrument.

    **11.**   **Borrower Not Released; Forbearance by Lender Not a Waiver.** Extension of the time of payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to any successor in interest of Borrower shall not operate to release the liability of the original Borrower or Borrower's successors in interest. Lender shall not be required to commence proceedings against any successor in interest or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy shall not be a waiver of or preclude the exercise of any right or remedy.

**OHIO FHA MORTGAGE**

**12. Successors and Assigns Bound; Joint and Several Liability; Co-Signers.** The covenants and agreements of this Security Instrument shall bind and benefit the successors and assigns of Lender and Borrower, subject to the provisions of paragraph 9(b). Borrower's covenants and agreements shall be joint and several. Any Borrower who co-signs this Security Instrument but does not execute the Note: (a) is co-signing this Security Instrument only to mortgage, grant and convey that Borrower's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower may agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without that Borrower's consent.

**13. Notices.** Any notice to Borrower provided for in this Security Instrument shall be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice shall be directed to the Property Address or any other address Borrower designates by notice to Lender. Any notice to Lender shall be given by first class mail to Lender's address stated herein or any address Lender designates by notice to Borrower. Any notice provided for in this Security Instrument shall be deemed to have been given to Borrower or Lender when given as provided in this paragraph.

**14. Governing Law; Severability.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision. To this end the provisions of this Security Instrument and the Note are declared to be severable.

**15. Borrower's Copy.** Borrower shall be given one conformed copy of the Note and of this Security Instrument.

**16. Hazardous Substances.** Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property that is in violation of any Environmental Law. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property.

Borrower shall promptly give Lender written notice of any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge. If Borrower learns, or is notified by any governmental or regulatory authority, that any removal or other remediation of any Hazardous Substances affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law.

As used in this paragraph 16, "Hazardous Substances" are those substances defined as toxic or hazardous substances by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials. As used in this paragraph 16, "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**17. Assignment of Rents.** Borrower unconditionally assigns and transfers to Lender all the rents and revenues of the Property. Borrower authorizes Lender or Lender's agents to collect the rents and revenues and hereby directs each tenant of the Property to pay the rents to Lender or Lender's agents. However, prior to Lender's notice to Borrower of Borrower's breach of any covenant or agreement in the Security Instrument, Borrower shall collect and receive all rents and revenues of the Property as trustee for the benefit of Lender and Borrower. This assignment of rents constitutes an absolute assignment and not an assignment for additional security only.

If Lender gives notice of breach to Borrower: (a) all rents received by Borrower shall be held by Borrower as trustee for benefit of Lender only, to be applied to the sums secured by the Security Instrument; (b) Lender shall be entitled to collect and receive all of the rents of the Property; and (c) each tenant of the Property shall pay all rents due and unpaid to Lender or Lender's agent on Lender's written demand to the tenant.

Borrower has not executed any prior assignment of the rents and has not and will not perform any act that would prevent Lender from exercising its rights under this paragraph 17.

Lender shall not be required to enter upon, take control of or maintain the Property before or after giving notice of breach to Borrower. However, Lender or a judicially appointed receiver may do so at any time there is a breach. Any application of rents shall not cure or waive any default or invalidate any other right or remedy of Lender. This assignment of rents of the Property shall terminate when the debt secured by the Security Instrument is paid in full.

**OHIO FHA MORTGAGE**

**18.  Foreclosure Procedure.** If Lender requires immediate payment in full under paragraph 9, Lender may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this paragraph 18, including, but not limited to, costs of title evidence.

If the Lender's interest in this Security Instrument is held by the Secretary and the Secretary requires immediate payment in full under paragraph 9, the Secretary may invoke the nonjudicial power of sale provided in the Single Family Mortgage Foreclosure Act of 1994 ("Act") (12 U.S.C. 3751 et seq.) by requesting a foreclosure commissioner designated under the Act to commence foreclosure and to sell the Property as provided in the Act. Nothing in the preceding sentence shall deprive the Secretary of any rights otherwise available to a Lender under this paragraph 18 or applicable law.

**19.  Release.** Upon payment of all sums secured by this Security Instrument, Lender shall discharge this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under applicable law.

**20.  Certain Other Advances.** In addition to any other sum secured hereby, this Security Instrument shall also secure the unpaid principal balance of, plus accrued interest on, any amount of money loaned, advanced or paid by Lender to or for the account and benefit of Borrower, after this Security Instrument is delivered to and filed with the Recorder's Office, _____ County, Ohio, for recording. Lender may make such advances in order to pay any real estate taxes and assessments, insurance premiums plus all other costs and expenses incurred in connection with the operation, protection or preservation of the Property, including to cure Borrower's defaults by making any such payments which Borrower should have paid as provided in this Security Instrument, it being intended by this paragraph 20 to acknowledge, affirm and comply with the provision of § 5301.233 of the Revised Code of Ohio.

**21.  Riders to this Security Instrument.** If one or more riders are executed by Borrower and recorded together with this Security Instrument, the covenants of each such rider shall be incorporated into and shall amend and supplement the covenants and agreements of this Security Instrument as if the rider(s) were a part of this Security Instrument. [Check applicable box(es)].

☐ Condominium Rider              ☐ Graduated Payment Rider       ☐ Growing Equity Rider

☐ Planned Unit Development Rider ☐ Adjustable Rate Rider         ☐ Rehabilitation Loan Rider

☐ Non-Owner Occupancy Rider      ☐ Other [Specify]

BY SIGNING BELOW, Borrower accepts and agrees to the terms contained in pages 1 through 7 of this Security Instrument and in any rider(s) executed by Borrower and recorded with it.

Executed this **21st** day of **August 2007**

_____ (Seal)          _____ (Seal)
**Clinton M. Hill III**                    -Borrower                                                -Borrower


_____ (Seal)          _____ (Seal)
                                          -Borrower                                                -Borrower


_____ (Seal)          _____ (Seal)
                                          -Borrower                                                -Borrower


State of **Ohio**
County of **Union**

The foregoing instrument was acknowledged before me this **21st day of August 2007**          (date) by
**Clinton M Hill III**

(name of person(s) acknowledged).

_____
Notary Public

My commission expires:

This instrument was prepared by:  **Jeffery M Holtschulte, Attorney At Law**
                                                          [Name]

**OHIO FHA MORTGAGE**

## EXHIBIT A LEGAL DESCRIPTION

Real Estate situated in the county of Logan, State of Ohio, City of Bellefontaine and situated in Lake Township V.M.S. No. 4399, and also being out of those lands formerly owned by Holmes Kress and better described as follows:

Beginning at an iron pin at the intersection of the East line of Shortridge Street with the North line of East Sandusky Avenue, this point being the Southwest corner of this described property;

Thence at right angles to Sandusky Avenue, N. 18° 00' W. along the East side of Shortridge 172.00 feet to an iron pin in the Southwest corner of the James West property as described in the Logan County Records of Deeds, Book 231, page 360. This point being the Northwest corner of this described property;

Thence following the James West South property line N. 76° 57' E. 132.00 feet to an iron pin at the Southeast corner of the aforementioned west property this point being the Northeast corner of this described property and also being the southwest corner of a second tract of land owned by a James West and described in Logan County Records of Deeds, Book 247 Page 553;

Thence along a tract of land retained by Patterson and Brubaker, S. 9° 28' E. 162.42 feet to a point in the North line of E. Sandusky Ave., this point being the Southeast corner of this described property;

Thence S. 72° W. with the North line of East Sandusky Avenue 107.39 feet to the point of beginning, commonly known as 851 East Sandusky Street, Bellefontaine, Ohio. Containing 0.46 Acre more or less.

**Parcel No. 17-092-10-07-003-000**

# CREDIT SCORE NOTICE

| Borrower Name(s):<br>**Clinton M. Hill III** | Lender:<br>**Taylor, Bean & Whitaker Mortgage Corp.** |
|---|---|
| | Date: **08/21/2007** |

## NOTICE TO THE HOME LOAN APPLICANT

In connection with your application for a home loan, the lender must disclose to you the score that a consumer reporting agency distributed to users and the lender used in connection with your home loan, and the key factors affecting your credit scores.

The credit score is a computer generated summary calculated at the time of the request and based on information that a consumer reporting agency or lender has on file. The scores are based on data about your credit history and payment patterns. Credit scores are important because they are used to assist the lender determining whether you will obtain a loan. They may also be used to determine what interest rate you may be offered on the mortgage. Credit scores can change over time, depending on your conduct, how your credit history and payment patterns change, and how credit scoring technologies change.

Because the score is based on information in your credit history, it is very important that you review the credit-related information that is being furnished to make sure it is accurate. Credit records may vary from one company to another.

If you have questions about your credit score or the credit information that is furnished to you, contact the consumer reporting agency at the address and telephone number provide with this notice, or contact the lender, if the lender developed or generated the credit score. The consumer reporting agency plays no part in the decision to take any action on the loan application and is unable to provide you with specific reasons for the decision on a loan application.

If you have questions concerning the terms of the loan, contact the lender.

One or more of the following consumer reporting agencies will provide the credit score:

**Experian**
P.O. Box 2002
Allen, TX 75013
1-888-397-3742

**Equifax Credit Information Services**
P.O. Box 740241
Atlanta, GA 30374
1-800-685-1111

**Trans Union**
P.O. Box 4000
Chester, PA 19016
1-866-887-2673

| | |
|---|---|
| **Clinton M. Hill III** | **645** |
| | **0** |
| | |
| | |
| | |
| | |

Your acknowledgment below signifies that this written notice was provided to you.

**Clinton M. Hill III** _____ Date

_____ Date

_____ Date

_____ Date

_____ Date

_____ Date

**Fact Act**
C0582L0

C0582_20070614.100000

Loan Number    **1936211**

## DISCLOSURE OF CREDIT SCORE INFORMATION

| Borrower Name: | Lender: |
|---|---|
| **Clinton M. Hill III** | **Taylor, Bean & Whitaker Mortgage Corp.** |
| Property Address | Date: |
| **851 E. Sandusky Ave**<br>**Bellefontaine, OH  43311** | **08/21/07** |

We are providing the following credit score information in connection with your loan application.

| Credit Score Provider: | Experian<br>P.O. Box 2002<br>Allen, TX 75013<br>1-800-397-3742 | Equifax Credit Info Service<br>P.O. Box 740241<br>Atlanta, GA 30374<br>1-800-685-1111 | Trans Union<br>P.O. Box 4000<br>Chester, PA 19016<br>1-866-887-2673 |
|---|---|---|---|

Current/Most Recent Credit Score for _____ **Clinton M. Hill III** _____ : **645**

Current/Most Recent Credit Score for _____ : **0**

Possible key factors that <u>could</u> adversely affect credit scores:
1. Proportion of Balances to High Credit on Revolving Accounts.
2. Too many consumer finance company accounts.
3. Serious delinquencies or derogatory credit (collections, bankruptcy, etc.).
4. Too many credit inquires in the past 12 months.

Range of Possible Credit Scores:   Low 300's to High 800's

Date of Credit Score:

**Clinton M. Hill III** _____   Date

_____   Date

_____   Date

_____   Date

_____   Date

_____   Date

C0595L0 – Disclosure of Credit Score Information

C0595_20070614.100000

Lender:  **Taylor, Bean & Whitaker Mortgage Corp.**
Borrower(s): **Clinton M. Hill III**
Property Address: **851 E. Sandusky Ave , Bellefontaine, OH  43311**
Loan Number: **1936211**

## ERROR AND OMISSION/ COMPLIANCE AGREEMENT
## AND
## CONSENT TO CORRECTION OF SCRIVENER'S ERRORS

The undersigned borrower(s) for and in consideration of the above-referenced lender funding this mortgage loan, agree as follows.   The undersigned, if requested by the lender, its agents or assigns ("Lender"), shall fully cooperate to cure clerical errors or inconsistencies that may be found in any and all documents associated with this mortgage loan ("Loan Documents") if such cure is deemed necessary or desirable in the reasonable discretion of the Lender to enable the Lender to sell, convey, seek guaranty or market said loan to any entity, including but not limited an investor, Federal Housing Authority, Department of Veterans Affairs or Municipal Bonding Authority.

The undersigned agrees to promptly comply with all requests made by the Lender but in all cases within ten (10) days from the date of the mailing of any such request.  The undersigned agrees to assume all costs, including but not limited to, legal fees and marketing losses resulting from undersigned's failure to comply with this Agreement in a timely manner.

The undersigned agrees that by signing below, he/she hereby authorizes and directs the Lender to cure any and all clerical errors in the Loan Documents including but not limited to the note and mortgage resulting from a scrivener's error in such cases where the scrivener's error does not affect a material term of the Loan Documents ("Scrivener's Error").  Said authorization to cure a Scrivener's Error is granted and may be effectuated by Lender at any time without need of further authorization of the undersigned.  Any investor of Lender or purchaser's of the Loan Documents may rely on this authorization and any cure made under such authorization as if made to it directly.

The undersigned do hereby so agree and covenant in order to assure that the Loan Documents executed this date will conform and be acceptable in the marketplace in the instance of transfer, sale or conveyance by Lender of its interests in and to said loan documentation.

Effective this ___**21st**___ day of ___**August 2007**___

| | |
|---|---|
| **Clinton M. Hill III** | Date |
| | Date |
| | Date |
| | Date |
| | Date |
| | Date |

STATE OF
COUNTY OF

Sworn to and subscribed before me this _____ day of _____.

_____
Notary Signature

_____
Type or Print Name

My Commission Expires: _____
Personally known _____ or Produced Identification _____
C0338L0

# NOTICE TO BORROWER
# NOT IN
# SPECIAL FLOOD HAZARD AREA

Loan Number:  **1936211**

Borrower:  **Clinton M. Hill III**

Property Address:  **851 E. Sandusky Ave , Bellefontaine, OH  43311**

This Notice Date is as of:  **8/21/2007**

The completed Standard Flood Hazard Determination Form indicates that the improved real estate or mobile home securing your loan is <u>not</u> located in an area designated by the Director of the Federal Emergency Management Agency ("FEMA") as a Special Flood Hazard Area ("SFHA"). As a result of this determination, you will not be required to obtain mandatory flood insurance in connection with the making of your loan.

However, your home may be near a SFHA. As such you, or your lender, may consider the advisability of obtaining flood insurance at reduced rates. You should check with your insurance agent or company as to the coverage types and amounts available to you and make your own determination as to whether you desire any such coverage.

If, however, at any time during the term of your loan the improved real estate or mobile home securing your loan is, due to re-mapping by FEMA or otherwise, located in an area that has been identified by the Director of FEMA as an area having special flood hazards and in which flood insurance is available under the National Flood Insurance Program, you will be so notified and advised that you must obtain an appropriate amount of flood insurance coverage. If, within 45 days after we send you such notification, you fail to purchase flood insurance in an amount not less than the amount we advise you necessary, we shall purchase such flood insurance on your behalf at your expense, as we are authorized to do in accordance with the provisions of the Flood Disaster Protection Act of 1973, as amended.

I/We, the undersigned borrower(s)/applicant(s), hereby understand and agree to all the above.

_____    Date: _____
**Clinton M. Hill III**

_____    Date: _____

_____    Date: _____

_____    Date: _____

_____    Date: _____

_____    Date: _____



*0332181936211*

C0150L0 – Notice to Borrower Not in Special Flood Hazard Area

C0150_20070523.100000

## ESCROW DISBURSEMENT AGREEMENT

CASE NUMBER:**1936211**                    DATE:_ **8/21/2007**

TO: **Taylor, Bean & Whitaker Mortgage Corp.**

1.  The undersigned seller(s) and buyer(s) direct to make disbursements for the subject transaction, pursuant to the attached closing statement.

2.  It is expressly understood that **ACS LIONHEART TITLE**
    in no way represents the buyer(s) or seller(s). We merely act solely for the lender in the disbursement of the mortgage proceeds.

3.  The undersigned buyer(s) direct(s) you to make such disbursements only when you are in a position to issue your ALTA owners title policy insuring the fee simple title of the buyer(s), subject only to:

    a.  General real estate taxes for the year

    b.  The Schedule B, Section 2, exceptions

    c.  The mortgage made by the owner(s) as part of this transaction

4.  Buyer(s) agree(s) to pay the escrow fee for this service.

5.  Seller(s) agree(s) to reimburse **ACS LIONHEART TITLE**
    for any fees required by the existing lender to obtain the release of the current mortgage (if any). It is understood that the fees will only be collected if the fee is incurred as a result of a conditional payoff letter and not for negligence on the part of **ACS LIONHEART TITLE**

_____        **Clinton M. Hill III**
Seller                                   _____

_____        _____
Seller

_____        _____
Seller

_____        _____
Seller

_____        _____
Seller

_____        _____
Seller

C0010L0



*0872181936211*

C0010_20070627.100000

Loan Number:  **1936211**

## SIGNATURE AFFIDAVIT AND AKA STATEMENT

I,  **Clinton M. Hill III**
certify that this is my true and correct signature:

**Clinton M. Hill III**
Borrower                                         Sample Signature  **Clinton M. Hill III**


Co Borrower                                      Sample Signature

## AKA STATEMENT

I,  **Clinton M. Hill III**          further certify that I am also known as:

**Clinton Hill III**
Name Variation (Print)                           Sample Signature (Variation)


Name Variation (Print)                           Sample Signature (Variation)


Name Variation (Print)                           Sample Signature (Variation)


Name Variation (Print)                           Sample Signature (Variation)


I,                          further certify that I am also known as:


Name Variation (Print)                           Sample Signature (Variation)


Name Variation (Print)                           Sample Signature (Variation)


Name Variation (Print)                           Sample Signature (Variation)


Name Variation (Print)                           Sample Signature (Variation)

State of **Ohio**                       ,        County SS:

On _____ before me _____ personally
appeared **Clinton M. Hill III**                      personally known to me (or proved to me on the
basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and
acknowledged to me that he/she/they executed same in his/her/their authorized capacity(ies), and that by
his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted,
executed the instrument.

Witness my hand and official seal.        Signature _____
(Reserved for official seal)

                                          _____
                                          Name (typed or printed)

                                          My Commission expires _____

C0014L0



Loan Number **1936211**

## HOLD HARMLESS STATEMENT

I/We, the undersigned, hereby state that our well and septic system located at the address noted below is in good working order; and that I/We are satisfied with the condition of the property "as is". Further, I/we understand that no termite inspection has been done of the property.

I/We further hold **Taylor, Bean & Whitaker Mortgage Corp.** , its successors and assigns, harmless from any defects.

Property Address:     **851 E. Sandusky Ave , Bellefontaine, OH  43311**

Dated this     **8/21/2007**

_____

**Clinton M. Hill III**

_____

_____

_____

_____

_____

Subscribed and sworn before me this   **8/21/2007**   Notary public and for   **Logan** County, **Ohio**

_____          _____
Notary Public                                          County

My commission expires:

C0015L0                                                                                      C0015_20070627.100000

# NOTICE TO HOMEOWNER
## Assumption of HUD/FHA Insured Mortgages
## Release of Personal Liability

You are legally obligated to make the monthly payments required by your mortgage (deed of trust) and promissory note.

The Department of Housing and Urban Development (HUD) has acted to keep investors and non-creditworthy purchasers from acquiring one-to-four family residential properties covered by certain FHA-insured mortgages. There are minor exceptions to the restriction on investors: loans to public agencies and some non-profit organizations, Indian tribes or servicepersons, and loans under special mortgage insurance programs for property sold by HUD, rehabilitation loans or refinancing of insured mortgages. Your lender can advise you if you are included in one of these exceptions.

HUD will therefore direct the lender to accelerate this FHA-insured mortgage loan if all or part of the property is sold or transferred to a purchaser or recipient (1) who will not occupy the property as his or her principal or secondary residence, or (2) who does occupy the property but whose credit has not been approved in accordance with HUD requirements. This policy will apply except for certain sales or transfers where acceleration is prohibited by law.

When a loan is accelerated, the entire balance is declared "immediately due and payable." Since HUD will not approve the sale of the property covered by this mortgage to an investor or to a person whose credit has not been approved, you, the original homeowner, would remain liable for the mortgage debt even though the title to the property might have been transferred to the new buyer.

Even if you sell your home by letting an approved purchaser (that is, a creditworthy owner- occupant) assume your mortgage, you are still liable for the mortgage debt unless you obtain a release from liability from your mortgage lender. FHA-approved lenders have been instructed by HUD to prepare such a release when an original homeowner sells his or her property to a creditworthy purchaser who executes an agreement to assume and pay the mortgage debt and thereby agrees to become the substitute mortgagor. The release is contained in Form HUD-92210-1, ("Approval of Purchaser and Release of Seller"). You should ask for it if the mortgage lender does not provide it to you automatically when you sell your home to a creditworthy owner-occupant purchaser who executes an agreement to assume personal liability for the debt. When this form is executed, you are no longer liable for the mortgage debt.

You must sign and date this notice as indicated, return one copy to your lender as proof of notification and keep one copy for your records.

| Date | X |
|------|---|
|      | Mortgagor **Clinton M. Hill III** |

| Date | X |
|------|---|
|      | Mortgagor |

| Date | X |
|------|---|
|      | Mortgagor |

| Date | X |
|------|---|
|      | Mortgagor |

**INSTRUCTION TO LENDER** ▶ **A copy of this Notice must be given to the mortgagor on or before the date of settlement. You should retain signed copy in the origination file.**

ITEM 4837L0 (0609)

GreatDocs™
*(Page 1 of 1)*

T4837_20070712.100000



*0652051936211*

Form **4506-T**

(Rev. April 2006)

Department of the Treasury
Internal Revenue Service

## Request for Transcript of Tax Return

▶ **Do not sign this form unless all applicable lines have been completed.**
**Read the instructions on page 2.**

▶ **Request may be rejected if the form is incomplete, illegible, or any required
line was blank at the time of signature.**

OMB No. 1545-1872

**Tip:** Use Form 4506-T to order a transcript or other return information free of charge. See the product list below. You can also call 1-800-829-1040 to order a transcript. If you need a copy of your return, use **Form 4506**, Request for Copy of Tax Return. There is a fee to get a copy of your return.

| 1a Name shown on tax return. If a joint return, enter the name shown first. | 1b First social security number on tax return or employer identification number (see instructions) |
|---|---|
| Clinton M. Hill III | 294708962 |
| 2a If a joint return, enter spouse's name shown on tax return | 2b Second social security number if joint tax return |

**3** Current name, address (including apt., room, or suite no.), city, state, and ZIP code
Clinton M. Hill III
851 E. Sandusky Ave
Bellefontaine, OH 43311

**4** Previous address shown on the last return filed if different from line 3

**5** If the transcript or tax information is to be mailed to a third party (such as a mortgage company), enter the third party's name, address, and telephone number. The IRS has no control over what the third party does with the tax information.
Taylor, Bean & Whitaker Mortgage Corp.
1417 North Magnolia Ave
Ocala, FL 34475

**1-800-225-2164**

**Caution:** *If a third party requires you to complete Form 4506-T, do not sign Form 4506-T if lines 6 and 9 are blank.*

**6** **Transcript requested.** Enter the tax form number here (1040, 1065, 1120, etc.) and check the appropriate box below. Enter only one tax form number per request. ▶ _____

**a** **Return Transcript,** which includes most of the line items of a tax return as filed with the IRS. Transcripts are only available for the following returns: Form 1040 series, Form 1065, Form 1120, Form 1120A, Form 1120H, Form 1120L, and Form 1120S. Return transcripts are available for the current year and returns processed during the prior 3 processing years. Most requests will be processed within 10 business days . . . . ☐

**b** **Account Transcript,** which contains information on the financial status of the account, such as payments made on the account, penalty assessments, and adjustments made by you or the IRS after the return was filed. Return information is limited to items such as tax liability and estimated tax payments. Account transcripts are available for most returns. Most requests will be processed within 30 calendar days . . . . . . . ☐

**c** **Record of Account,** which is a combination of line item information and later adjustments to the account. Available for current year and 3 prior tax years. Most requests will be processed within 30 calendar days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

**7** **Verification of Nonfiling,** which is proof from the IRS that you **did not** file a return for the year. Most requests will be processed within 10 business days . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ☐

**8** **Form W-2, Form 1099 series, Form 1098 series, or Form 5498 series transcript.** The IRS can provide a transcript that includes data from these information returns. State or local information is not included with the Form W-2 information. The IRS may be able to provide this transcript information for up to 10 years. Information for the current year is generally not available until the year after it is filed with the IRS. For example, W-2 information for 2003, filed in 2004, will not be available from the IRS until 2005. If you need W-2 information for retirement purposes, you should contact the Social Security Administration at 1-800-772-1213. Most requests will be processed within 45 days . . . . . . . . . . . . . . . . . . . ☐

**Caution:** *If you need a copy of Form W-2 or Form 1099, you should first contact the payer. To get a copy of the Form W-2 or Form 1099 filed with your return, you must use Form 4506 and request a copy of your return, which includes all attachments.*

**9** **Year or period requested.** Enter the ending date of the year or period, using the mm/dd/yyyy format. If you are requesting more than four years or periods, you must attach another Form 4506-T. For requests relating to quarterly tax returns, such as Form 941, you must enter each quarter or tax period separately.

/ /     / /     / /     / /

**Signature of taxpayer(s).** I declare that I am either the taxpayer whose name is shown on line 1a or 2a, or a person authorized to obtain the tax information requested. If the request applies to a joint return, **either** husband or wife must sign. If signed by a corporate officer, partner, guardian, tax matters partner, executor, receiver, administrator, trustee, or party other than the taxpayer, I certify that I have the authority to execute Form 4506-T on behalf of the taxpayer.

Telephone number of taxpayer on line 1a or 2a
( **) (937) 292-7806**

**Sign Here**

▶ Signature (see instructions)     Date

▶ Title (if line 1a above is a corporation, partnership, estate, or trust)

Spouse's signature     Date

For Privacy Act and Paperwork Reduction Act Notice, see page 2.     Cat. No. 37667N     Form **4506-T** (Rev. 4-2006)
ITEM 9470L1 (0605)

Form 4506-T (Rev. 4-2006)

## General Instructions

**Purpose of form.** Use Form 4506-T to request tax return information. You can also designate a third party to receive the information. See line 5.

**Tip.** Use Form 4506, Request for Copy of Tax Return, to request copies of tax returns.

**Where to file.** Mail or fax Form 4506-T to the address below for the state you lived in when that return was filed. There are two address charts: one for individual transcripts (Form 1040 series and Form W-2) and one for all other transcripts.

**Note.** *If you are requesting more than one transcript or other product and the chart below shows two different service centers, mail your request to the service center based on the address of your most recent return.*

## Chart for individual transcripts (Form 1040 series and Form W-2)

| If you filed an individual return and lived in: | Mail or fax to the "Internal Revenue Service" at: |
| --- | --- |
| District of Columbia, Maine, Maryland, Massachusetts, New Hampshire, New York, Vermont | RAIVS Team Stop 679 Andover, MA 05501 978-247-9255 |
| Alabama, Delaware, Florida, Georgia, North Carolina, Rhode Island, South Carolina, Virginia | RAIVS Team P.O. Box 47-421 Stop 91 Doraville, GA 30362 678-530-5326 |
| Arkansas, Kansas, Kentucky, Louisiana, Mississippi, Oklahoma, Tennessee, Texas, West Virginia | RAIVS Team Stop 6716 AUSC Austin, TX 73301 512-460-2272 |
| Alaska, Arizona, California, Colorado, Hawaii, Idaho, Montana, Nebraska, Nevada, New Mexico, Oregon, South Dakota, Utah, Washington, Wyoming | RAIVS Team Stop 38101 Fresno, CA 93888 559-253-4990 |
| Connecticut, Illinois, Indiana, Iowa, Michigan, Minnesota, Missouri, North Dakota, Ohio, Wisconsin | RAIVS Team Stop 6705–B41 Kansas City, MO 64999 816-823-7667 |
| New Jersey, Pennsylvania, a foreign country, or A.P.O. or F.P.O. address | RAIVS Team DP 135SE Philadelphia, PA 19255-0695 215-516-2931 |

## Chart for all other transcripts

| If you lived in or your business was in: | Mail or fax to the "Internal Revenue Service" at: |
| --- | --- |
| Alabama, Alaska, Arizona, Arkansas, California, Colorado, Florida, Georgia, Hawaii, Idaho, Iowa, Kansas, Louisiana, Minnesota, Mississippi, Missouri, Montana, Nebraska, Nevada, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah, Washington, Wyoming | RAIVS Team P.O. Box 9941 Mail Stop 6734 Ogden, UT 84409 801-620-6922 |
| Connecticut, Delaware, District of Columbia, Illinois, Indiana, Kentucky, Maine, Maryland, Massachusetts, Michigan, New Hampshire, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Rhode Island, South Carolina, Vermont, Virginia, West Virginia, Wisconsin | RAIVS Team P.O. Box 145500 Stop 2800 F Cincinnati, OH 45250 859-669-3592 |
| A foreign country, or A.P.O. or F.P.O. address | RAIVS Team DP 135SE Philadelphia, PA 19255-0695 215-516-2931 |

**Line 1b.** Enter your employer identification number (EIN) if your request relates to a business return. Otherwise, enter the first social security number (SSN) shown on the return. For example, if you are requesting Form 1040 that includes Schedule C (Form 1040), enter your SSN.

**Line 6.** Enter only one tax form number per request.

**Signature and date.** Form 4506-T must be signed and dated by the taxpayer listed on line 1a or 2a. If you completed line 5 requesting the information be sent to a third party, the IRS must receive Form 4506-T within 60 days of the date signed by the taxpayer or it will be rejected.

*Individuals.* Transcripts of jointly filed tax returns may be furnished to either spouse. Only one signature is required. Sign Form 4506-T exactly as your name appeared on the original return. If you changed your name, also sign your current name.

*Corporations.* Generally, Form 4506-T can be signed by: (1) an officer having legal authority to bind the corporation, (2) any person designated by the board of directors or other governing body, or (3) any officer or employee on written request by any principal officer and attested to by the secretary or other officer.

*Partnerships.* Generally, Form 4506-T can be signed by any person who was a member of the partnership during any part of the tax period requested on line 9.

*All others.* See Internal Revenue Code section 6103(e) if the taxpayer has died, is insolvent, is a dissolved corporation, or if a trustee, guardian, executor, receiver, or administrator is acting for the taxpayer.

**Documentation.** For entities other than individuals, you must attach the authorization document. For example, this could be the letter from the principal officer authorizing an employee of the corporation or the Letters Testamentary authorizing an individual to act for an estate.

**Privacy Act and Paperwork Reduction Act Notice.** We ask for the information on this form to establish your right to gain access to the requested tax information under the Internal Revenue Code. We need this information to properly identify the tax information and respond to your request. Sections 6103 and 6109 require you to provide this information, including your SSN or EIN. If you do not provide this information, we may not be able to process your request. Providing false or fraudulent information may subject you to penalties.

Routine uses of this information include giving it to the Department of Justice for civil and criminal litigation, and cities, states, and the District of Columbia for use in administering their tax laws. We may also disclose this information to other countries under a tax treaty, to federal and state agencies to enforce federal nontax criminal laws, or to federal law enforcement and intelligence agencies to combat terrorism.

You are not required to provide the information requested on a form that is subject to the Paperwork Reduction Act unless the form displays a valid OMB control number. Books or records relating to a form or its instructions must be retained as long as their contents may become material in the administration of any Internal Revenue law. Generally, tax returns and return information are confidential, as required by section 6103.

The time needed to complete and file Form 4506-T will vary depending on individual circumstances. The estimated average time is: **Learning about the law or the form,** 10 min.; **Preparing the form,** 12 min.; and **Copying, assembling, and sending the form to the IRS,** 20 min.

If you have comments concerning the accuracy of these time estimates or suggestions for making Form 4506-T simpler, we would be happy to hear from you. You can write to the Internal Revenue Service, Tax Products Coordinating Committee, SE:W:CAR:MP:T:T:SP, 1111 Constitution Ave. NW, IR-6406, Washington, DC 20224. Do not send the form to this address. Instead, see *Where to file* on this page.

**ADDENDUM TO THE MORTGAGE LOAN ORIGINATION**
**DISCLOSURE STATEMENT** *(IF APPLICABLE)*                Date: **August 21, 2007**

| BORROWER(S) NAME AND ADDRESS ("You," "Your") | BROKER NAME AND ADDRESS |
|---|---|
| **Clinton M. Hill III**<br>**851 E. Sandusky Ave**<br>**Bellefontaine, OH 43311** | **1st Monarch Mortgage, LTD**<br>**1000 N Maple Street**<br>**Marysville, OH 43040** |

**Loan Number:        1936211**

# HIGH LOAN TO VALUE DISCLOSURE

Revised Code 1322.062(A)(1)(j) & Ohio Administrative Code 1301:8-7-15(A)(9)

**You are applying for a loan that is more than 90% of your home's value. It will be hard for you to refinance this loan. If you sell your home, you might owe more money on the loan than you get from the sale.**

By signing below, borrower acknowledges receipt of this Addendum to the Mortgage Loan Origination Disclosure Statement.

| | |
|---|---|
| Borrower **Clinton M. Hill III**     Date | Borrower     Date |
| Borrower     Date | Borrower     Date |
| Borrower     Date | Borrower     Date |
| Signature of Loan Officer **Matthew L. Smith**     Date | Loan Officer's License Number |

© 2006 Harland Financial Solutions, Inc.
OHIO
ITEM 2022L0 (0701)



GreatDocs™
*(Page 1 of 1)*

## ADDENDUM TO THE GOOD FAITH ESTIMATE

Date: **August 21, 2007**

| BORROWER(S) NAME AND ADDRESS ("You," "Your") | BROKER NAME AND ADDRESS ("We") |
|---|---|
| **Clinton M. Hill III**<br>**851 E. Sandusky Ave**<br>**Bellefontaine, OH 43311** | **1st Monarch Mortgage, LTD**<br>**1000 N Maple Street**<br>**Marysville, OH  43040** |

**Loan Number:     1936211**

Revised Code 1322.062(D) & Ohio Administrative Code 1301:8-7-15(D)

<u>Nature of Relationship</u>: In connection with this residential mortgage loan, you, the borrower(s), has/have requested assistance from **Taylor, Bean & Whitaker Mortgage Corp.** (company name) in arranging credit. **We do not distribute all products in the marketplace and <u>CANNOT guarantee the lowest rate</u>.**

Termination: This agreement will continue until one of the following events occur:

1. The loan closes.

2. The request is denied.

3. The borrower withdraws the request.

4. The borrower decides to use another source for origination.

5. The borrower is provided a revised good faith estimate statement.

**<u>NOTICE TO BORROWER(S):</u> Signing this document does NOT obligate you to obtain a mortgage loan through this mortgage originator nor is this a loan commitment or an approval; nor is your interest rate locked at this time unless otherwise disclosed on a separate Rate Lock Disclosure Form. <u>Do not sign this document until you have read and understood the information in it.</u> You will receive a re-disclosure of any increase in interest rate or if the total sum of disclosed settlement/closing costs increases by 10% or more of the original estimate. Should any such increase occur; mandatory re-disclosure must occur prior to the settlement or close of escrow.**

**Signing this Addendum is an acknowledgment by you, the Borrower, of your receipt of the Good Faith Estimate and this addendum.**

| Borrower **Clinton M. Hill III** | Date | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

© 2006 Harland Financial Solutions, Inc.<br>OHIO<br>ITEM 2023L0 (0701)



GreatDocs™<br>*(Page 1 of 1)*

**Loan Number  1936211**

## INSTRUCTIONS OF BORROWER
### Form B-1
Revised Code 1322.081 & Ohio Administrative Code 1301:8-7-26

**Type of loan sought:** _____ First mortgage       _____ Second Mortgage

_____ Fixed rate
_____ Variable rate
    If rate is to adjust after period of time of fixed rate, please state the time of fixed and time of variable:
    _____ (fixed years) / _____ (variable years)
_____ Interest Only
_____ Balloon
_____ Home Equity Line of Credit

**Term of loan sought:**   _____ 30 yrs.
    _____ 20 yrs.
    _____ 15 yrs.
    _____ Other (explain): _____

**Purpose of loan:**   _____ Purchase property
    _____ Pay for home improvement
*If more than one*   _____ Refinance at lower rate or monthly payment (home only)
*purpose, then rank*   _____ Consolidate consumer debt and lower monthly payments
*priority by numbers*       If debt payoff is a major purpose, please state which debts you
*(e.g., 1, 2, 3 etc.)*       expect to payoff: _____
    _____
    _____
    _____

_____ Refinance for shorter/longer term (circle one)
_____ Refinance with cash out
    If cash out is a major purpose, please state how much you expect to have paid to you in cash:
_____

_____ Other (explain): _____
_____

**Estimated loan amount: $** _____

**Estimated value of home: $** _____

| Borrower **Clinton M. Hill III** | Date | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

© 2007 Harland Financial Solutions, Inc.
**OHIO**
ITEM 2027L0 (0701)



## NOTICE OF CHANGE IN MORTGAGE TERMS

Date: **8/21/2007**

| BORROWER(S) NAME AND ADDRESS ("You," "Your") | MORTGAGE BROKER NAME AND ADDRESS |
|---|---|
| **Clinton M. Hill III**<br>**851 E. Sandusky Ave**<br>**Bellefontaine, OH 43311** | **1st Monarch Mortgage, LTD**<br>**1000 N Maple Street**<br>**Marysville, OH  43040** |

PHONE NO.: **(937) 642-8100**     FAX NO.: **(937) 642-2109**

**Loan Number:     1936211**

CERTIFICATE OF REGISTRATION NO.:

Revised Code 1322.062 & 1322.064

You are hereby notified that the terms of the mortgage loan that the above-listed registrant is able to originate on your behalf have changed in the following way(s) as set forth below.

Material change to:

Type of loan (explain):

Term of loan (explain):

Interest rate (explain):

Monthly payment (explain):

Inclusion of escrow for taxes and insurance (explain):

Placement/requirement of PMI (explain):

Settlement costs, e.g., Lender or title fees (explain):

By your signature, you acknowledge receipt of this disclosure statement on:

Date (to be filled in by applicant)

| Borrower **Clinton M. Hill III** | Date | Borrower | Date |
|---|---|---|---|
| Borrower | Date | Borrower | Date |
| Borrower | Date | Borrower | Date |

Signature of loan officer **Matthew L. Smith**

Loan officer's license number

© 2006 Harland Financial Solutions, Inc.
OHIO
ITEM 2028L0 (0702)



GreatDocs™
*(Page 1 of 1)*

Taylor, Bean & Whitaker Mortgage Corp.

1417 North Magnolia Ave, Ocala, FL 34475
352-369-6200

## Uniform Residential Loan Application

This application is designed to be completed by the applicant(s) with the Lender's assistance. Applicants should complete this form as "Borrower" or "Co-Borrower," as applicable. Co-Borrower information must also be provided (and the appropriate box checked) when ☐ the income or assets of a person other than the Borrower (including the Borrower's spouse) will be used as a basis for loan qualification or ☐ the income or assets of the Borrower's spouse or other person who has community property rights pursuant to state law will not be used as a basis for loan qualification, but his or her liabilities must be considered because the spouse or other person has community property rights pursuant to applicable law and Borrower resides in a community property state, the security property is located in a community property state, or the Borrower is relying on other property located in a community property state as a basis for repayment of the loan.

If this is an application for joint credit, Borrower and Co-Borrower each agree that we intend to apply for joint credit (sign below):

| Borrower Clinton M. Hill III | Co-Borrower |
|---|---|

### I. TYPE OF MORTGAGE AND TERMS OF LOAN

| Mortgage Applied for: | VA | Conventional | Other (explain): | Agency Case Number | Lender Case Number |
|---|---|---|---|---|---|
| | X FHA | USDA/Rural Housing Service | | 413-4685544-703 | 1936211 |

| Amount | Interest Rate | No. of Months | Amortization Type: | | |
|---|---|---|---|---|---|
| $134,995.00 | 6.8750 % | 360 | | X Fixed Rate | Other (explain): |
| | | | | GPM | ARM (type): |

### II. PROPERTY INFORMATION AND PURPOSE OF LOAN

| Subject Property Address (street, city, state & ZIP) | No. of Units |
|---|---|
| 851 E. Sandusky Ave , Bellefontaine, OH 43311 | 1 |

| Legal Description of Subject Property (attach description if necessary) | Year Built |
|---|---|
| See Attached Exhibit A. | 1900 |

| Purpose of Loan | Purchase | Construction | Other (explain): | Property will be: | | |
|---|---|---|---|---|---|---|
| X Refinance | Construction-Permanent | | | X Primary Residence | Secondary Residence | Investment |

Complete this line if construction or construction-permanent loan.

| Year Lot Acquired | Original Cost | Amount Existing Liens | (a) Present Value of Lot | (b) Cost of Improvements | Total (a + b) |
|---|---|---|---|---|---|
| | $ | $ | $ | $ | $ |

Complete this line if this is a refinance loan.

| Year Acquired | Original Cost | Amount Existing Liens | Purpose of Refinance | Describe Improvements | made | to be made |
|---|---|---|---|---|---|---|
| 1987 | $60,000.00 | $110,276.00 | Cash Out | | | |
| | | | | Cost: $ | | |

| Title will be held in what Name(s) Clinton M. Hill, III | Manner in which Title will be held | Estate will be held in: |
|---|---|---|
| | | X Fee Simple |
| Source of Down Payment, Settlement Charges, and/or Subordinate Financing (explain) | | Leasehold (show expiration date) |

### III. BORROWER INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Borrower's Name (include Jr. or Sr. if applicable) | Co-Borrower's Name (include Jr. or Sr. if applicable) |
|---|---|
| Clinton M. Hill III | |

| Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School | Social Security Number | Home Phone (incl. area code) | DOB (mm/dd/yyyy) | Yrs. School |
|---|---|---|---|---|---|---|---|
| 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 | (937) 292-7806 | 04/20/1961 | 16.0 | | | | |

| Married | X Unmarried (include single, divorced, widowed) | Dependents (not listed by Co-Borrower) | Married | Unmarried (include single, divorced, widowed) | Dependents (not listed by Borrower) |
|---|---|---|---|---|---|
| Separated | | no. 2  ages 16,12 | Separated | | no.  ages |

| Present Address (street, city, state, ZIP) X Own  Rent  21.00 No. Yrs. | Present Address (street, city, state, ZIP)  Own  Rent  No. Yrs. |
|---|---|
| 851 E. Sandusky Ave | |
| Bellefontaine, OH 43311 | |

| Mailing Address, if different from Present Address | Mailing Address, if different from Present Address |
|---|---|

If residing at present address for less than two years, complete the following:

| Former Address (street, city, state, ZIP)  Own  Rent  No. Yrs. | Former Address (street, city, state, ZIP)  Own  Rent  No. Yrs. |
|---|---|

### IV. EMPLOYMENT INFORMATION

| Borrower | Co-Borrower |
|---|---|

| Name & Address of Employer  Self Employed | Yrs. on this job | Name & Address of Employer  Self Employed | Yrs. on this job |
|---|---|---|---|
| HONDA OF AMERICA | 21.00 | | |
| 27000 HONDA PARKWAY | Yrs. employed in this line of work/profession | | Yrs. employed in this line of work/profession |
| MARYSVILLE, OH 43040 | 21.00 | | |

| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
|---|---|---|---|
| Engineering Coordinator | (937) 642-5000 | | |

Freddie Mac Form 65 7/05

Fannie Mae Form 1003 7/05
GreatDocs™
(Page 1 of 5)

ITEM 7300L1 (0609)

*0882051936211*

7300_20070730.100001

*If employed in current position for less than two years or if currently employed in more than one position, complete the following:*

## IV. EMPLOYMENT INFORMATION (cont'd)

| Borrower | | Co-Borrower | |
|---|---|---|---|
| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |
| Name & Address of Employer ☐ Self Employed | Dates (from - to) | Name & Address of Employer ☐ Self Employed | Dates (from - to) |
| | Monthly Income $ | | Monthly Income $ |
| Position/Title/Type of Business | Business Phone (incl. area code) | Position/Title/Type of Business | Business Phone (incl. area code) |

## V. MONTHLY INCOME AND COMBINED HOUSING EXPENSE INFORMATION

| Gross Monthly Income | Borrower | Co-Borrower | Total | Combined Monthly Housing Expense | Present | Proposed |
|---|---|---|---|---|---|---|
| Base Empl. Income* | $ 6,851.14 | $ | $ 6,851.14 | Rent | $ | |
| Overtime | | | | First Mortgage (P&I) | 1,232.00 | $ 886.82 |
| Bonuses | | | | Other Financing (P&I) | | 50.00 |
| Commissions | | | | Hazard Insurance | | 100.00 |
| Dividends/Interest | | | | Real Estate Taxes | | 55.42 |
| Net Rental Income | | | | Mortgage Insurance | | |
| Other (before completing, see the notice in describe other income," below) | | | 0.00 | Homeowner Assn. Dues | | |
| | | | | Other: | | |
| Total | $ 6,851.14 | $ | $ 6,851.14 | Total | $ 1,232.00 | $ 1,092.24 |

\* Self Employed Borrower(s) may be required to provide additional documentation such as tax returns and financial statements.

**Describe Other Income**  *Notice:* Alimony, child support, or separate maintenance income need not be revealed if the Borrower (B) or Co-Borrower (C) does not choose to have it considered for repaying this loan.

| B/C | | Monthly Amount |
|---|---|---|
| | | $ |
| | | |
| | | |

## VI. ASSETS AND LIABILITIES

This Statement and any applicable supporting schedules may be completed jointly by both married and unmarried Co-Borrowers if their assets and liabilities are sufficiently joined so that the Statement can be meaningfully and fairly presented on a combined basis; otherwise, separate Statements and Schedules are required. If the Co-Borrower section was completed about a non-applicant spouse or other person, this Statement and supporting schedules must be completed about that spouse or other person also.     Completed ☐ Jointly ☒ Not Jointly

| ASSETS Description | Cash or Market Value | Liabilities and Pledged Assets. List the creditor's name, address, and account number for all outstanding debts, including automobile loans, revolving charge accounts, real estate loans, alimony, child support, stock pledges, etc. Use continuation sheet, if necessary. Indicate by (*) those liabilities, which will be satisfied upon sale of real estate owned or upon refinancing of the subject property. | | |
|---|---|---|---|---|
| Cash deposit toward purchase held by: | $ | | | |
| | | **LIABILITIES** | Monthly Payment & Months Left to Pay | Unpaid Balance |
| *List checking and savings accounts below* | | | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company HOMEQ SERVICING | $ Payment/Months 1,232.00 90 | $ 110,276.00 * |
| Acct. no. | $ 1.00 | Acct. no. 6930005546044 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company GEMB/SAMS | $ Payment/Months 19.00 24 | $ 439.00 |
| Acct. no. | $ | Acct. no. 771410039455 | | |
| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
| Acct. no. | $ | Acct. no. | | |

Freddie Mac Form 65 7/05

ITEM 7300L2 (0609)

Fannie Mae Form 1003 7/05
GreatDocs™
(Page 2 of 5)

## VI. ASSETS AND LIABILITIES (cont'd)

| Name and address of Bank, S&L, or Credit Union | | Name and address of Company | $ Payment/Months | $ |
|---|---|---|---|---|
| | | | | |
| Acct. no. | $ | | | |
| Stocks & Bonds (Company name/ number & description) | $ | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Life insurance net cash value | $ | | | |
| Face amount: $ | | Acct. no. | | |
| Subtotal Liquid Assets | $ 1.00 | Name and address of Company | $ Payment/Months | $ |
| Real estate owned (enter market value from schedule of real estate owned) | $ 140,000.00 | | | |
| Vested interest in retirement fund | $ 2,942.86 | | | |
| Net worth of business(es) owned (attach financial statement) | $ | Acct. no. | | |
| | | Name and address of Company | $ Payment/Months | $ |
| Automobiles owned (make and year) | $ | | | |
| | | Acct. no. | | |
| | | Alimony/Child Support/Separate Maintenance Payments Owed to: | $ | |
| Other Assets (itemize) | $ | Job-Related Expense (child care, union dues, etc.) Bankruptcy Trustee | $ 2,100.00 | |
| | | Total Monthly Payments | $ 3,526.00 | |
| Total Assets a. | $ 142,943.86 | Net Worth (a minus b) ▶ | $ 32,228.86 | Total Liabilities b. $ 110,715.00 |

**Schedule of Real Estate Owned** (If additional properties are owned, use continuation sheet.)

| Property Address (enter S if sold, PS if pending sale or R if rental being held for income) ▼ | Type of Property | Present Market Value | Amount of Mortgages & Liens | Gross Rental Income | Mortgage Payments | Insurance, Maintenance, Taxes & Misc. | Net Rental Income |
|---|---|---|---|---|---|---|---|
| 851 E. Sandusky Ave , Bellefontaine, OH 43311 | H | SFR | $ 140,000 | $ 110,000 | $ | $ 1,100.00 | $ 100 | $ |
| | | | $ | $ | $ | $ | $ | $ |
| | | | $ | $ | $ | $ | $ | $ |
| | Totals | | $ 140,000 | $ 110,000 | $ | $ 1,100.00 | $ 100 | $ |

List any additional names under which credit has previously been received and indicate appropriate creditor name(s) and account number(s):

| Alternate Name | Creditor Name | Account Number |
|---|---|---|
| | | |
| | | |

## VII. DETAILS OF TRANSACTION

| | |
|---|---|
| a. Purchase price | $ |
| b. Alterations, improvements, repairs | |
| c. Land (if acquired separately) | |
| d. Refinance (incl. debts to be paid off) | 110,276.00 |
| e. Estimated prepaid items | 1,098.31 |
| f. Estimated closing costs | 1,484.67 |
| g. PMI, MIP, Funding Fee | 1,995.00 |
| h. Discount (if Borrower will pay) | |
| i. Total costs (add items a through h) | 114,853.98 |

## VIII. DECLARATIONS

If you answer "Yes" to any questions a through i, please use continuation sheet for explanation.

| | Borrower | | Co-Borrower | |
|---|---|---|---|---|
| | Yes | No | Yes | No |
| a. Are there any outstanding judgments against you? | | X | | |
| b. Have you been declared bankrupt within the past 7 years? | X | | | |
| c. Have you had property foreclosed upon or given title or deed in lieu thereof in the last 7 years? | | X | | |
| d. Are you a party to a lawsuit? | | X | | |
| e. Have you directly or indirectly been obligated on any loan which resulted in foreclosure, transfer of title in lieu of foreclosure, or judgment? | | X | | |

(This would include such loans as home mortgage loans, SBA loans, home improvement loans, educational loans, manufactured (mobile) home loans, any mortgage, financial obligation, bond, or loan guarantee. If "Yes," provide details, including date, name, and address of Lender, FHA or VA case number, if any, and reasons for the action.)

Freddie Mac Form 65 7/05

ITEM 7300L3 (0609)

Fannie Mae Form 1003 7/05
GreatDocs™
(Page 3 of 5)

| VII. DETAILS OF TRANSACTION (cont'd) | | | VIII. DECLARATIONS (cont'd) | | | | | |
|---|---|---|---|---|---|---|---|---|

| | | | | Borrower | | Co-Borrower | |
|---|---|---|---|---|---|---|---|
| | | | If you answer "Yes" to any questions a through i, please use continuation sheet for explanation. | Yes | No | Yes | No |
| j. | Subordinate financing | | f. Are you presently delinquent or in default on any Federal debt or any other loan, mortgage, financial obligation, bond, or loan guarantee? If "Yes," give details as described in the preceding question. | | X | | |
| k. | Borrower's closing costs paid by Seller | | g. Are you obligated to pay alimony, child support, or separate maintenance? | X | | | |
| l. | Other Credits (explain) | | h. Is any part of the down payment borrowed? | | X | | |
| | | | i. Are you a co-maker or endorser on a note? | | X | | |
| m. | Loan amount (exclude PMI, MIP, Funding Fee financed) | | ------------------------------------------------------- | | | | |
| | | 133,000.00 | j. Are you a U.S. citizen? | X | | | |
| | | | k. Are you a permanent resident alien? | | X | | |
| n. | PMI, MIP, Funding Fee financed | | l. Do you intend to occupy the property as your primary residence? If "Yes," complete question m. | X | | | |
| | | 1,995.00 | m. Have you had an ownership interest in a property in the last three years? | X | | | |
| o. | Loan amount (add m & n) | | (1) What type of property did you own—principal residence (PR), second home (SH), or investment property (IP)? | PR | | | |
| | | 134,995.00 | (2) How did you hold title to the home—solely by yourself (S), jointly with your spouse (SP), or jointly with another person (O)? | S | | | |
| p. | Cash from/to Borrower (subtract j, k, l & o from i) | | | | | | |
| | | -20,141.02 | | | | | |

## IX. ACKNOWLEDGEMENT AND AGREEMENT

Each of the undersigned specifically represents to Lender and to Lender's actual or potential agents, brokers, processors, attorneys, insurers, servicers, successors and assigns and agrees and acknowledges that: (1) the information provided in this application is true and correct as of the date set forth opposite my signature and that any intentional or negligent misrepresentation of this information contained in this application may result in civil liability, including monetary damages, to any person who may suffer any loss due to reliance upon any misrepresentation that I have made on this application, and/or in criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Sec. 1001, et seq.; (2) the loan requested pursuant to this application (the "Loan") will be secured by a mortgage or deed of trust on the property described in this application; (3) the property will not be used for any illegal or prohibited purpose or use; (4) all statements made in this application are made for the purpose of obtaining a residential mortgage loan; (5) the property will be occupied as indicated in this application; (6) the Lender, its servicers, successors or assigns may retain the original and/or an electronic record of this application, whether or not the Loan is approved; (7) the Lender and its agents, brokers, insurers, servicers, successors, and assigns may continuously rely on the information contained in the application, and I am obligated to amend and/or supplement the information provided in this application if any of the material facts that I have represented herein should change prior to closing of the Loan; (8) in the event that my payments on the Loan become delinquent, the Lender, its servicers, successors or assigns may, in addition to any other rights and remedies that it may have relating to such delinquency, report my name and account information to one or more consumer reporting agencies; (9) ownership of the Loan and/or administration of the Loan account may be transferred with such notice as may be required by law; (10) neither Lender nor its agents, brokers, insurers, servicers, successors or assigns has made any representation or warranty, express or implied, to me regarding the property or the condition or value of the property; and (11) my transmission of this application as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or my facsimile transmission of this application containing a facsimile of my signature, shall be as effective, enforceable and valid as if a paper version of this application were delivered containing my original written signature.

**Acknowledgement.** Each of the undersigned hereby acknowledges that any owner of the Loan, its servicers, successors and assigns, may verify or reverify any information contained in this application or obtain any information or data relating to the Loan, for any legitimate business purpose through any source, including a source named in this application or a consumer reporting agency.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X  Clinton M. Hill III | | X | |

## X. INFORMATION FOR GOVERNMENT MONITORING PURPOSES

The following information is requested by the Federal Government for certain types of loans related to a dwelling in order to monitor the lender's compliance with equal credit opportunity, fair housing and home mortgage disclosure laws. You are not required to furnish this information, but are encouraged to do so. The law provides that a lender may not discriminate either on the basis of this information, or on whether you choose to furnish it. If you furnish the information, please provide both ethnicity and race. For race, you may check more than one designation. If you do not furnish ethnicity, race, or sex, under Federal regulations, this lender is required to note the information on the basis of visual observation and surname if you have made this application in person. If you do not wish to furnish the information, please check the box below. (Lender must review the above material to assure that the disclosures satisfy all requirements to which the lender is subject under applicable state law for the particular type of loan applied for.)

| BORROWER | I do not wish to furnish this information | CO-BORROWER | I do not wish to furnish this information |
|---|---|---|---|
| **Ethnicity:** | Hispanic or Latino [X] Not Hispanic or Latino | **Ethnicity:** | Hispanic or Latino  Not Hispanic or Latino |
| **Race:** | American Indian or Alaska Native   Asian   Black or African American | **Race:** | American Indian or Alaska Native   Asian   Black or African American |
| | Native Hawaiian or Other Pacific Islander  [X] White | | Native Hawaiian or Other Pacific Islander   White |
| **Sex:** | Female  [X] Male | **Sex:** | Female   Male |

| To be Completed by Interviewer | Interviewer's Name (print or type) | Name and Address of Interviewer's Employer |
|---|---|---|
| This application was taken by: | Matthew L Smith | 1st Monarch Mortgage, LTD |
| [ ] Face-to-face interview | Interviewer's Signature            Date | 1000 N Maple Street |
| [ ] Mail | | Marysville, OH  43040 |
| [X] Telephone | 8/1/07 | |
| [ ] Internet | Interviewer's Phone Number (incl. area code) | |
| | (937) 642-8100 | |

| CONTINUATION SHEET/RESIDENTIAL LOAN APPLICATION | | |
|---|---|---|
| Use this continuation sheet if you need more space to complete the Residential Loan Application. Mark B f or Borrower or C for Co-Borrower. | Borrower:    Clinton M. Hill III | Agency Case Number: |
| | Co-Borrower: | Lender Case Number:<br>**1936211** |

I/We fully understand that it is a Federal crime punishable by fine or imprisonment, or both, to knowingly make any false statements concerning any of the above facts as applicable under the provisions of Title 18, United States Code, Section 1001, et seq.

| Borrower's Signature | Date | Co-Borrower's Signature | Date |
|---|---|---|---|
| X _____<br>Clinton M. Hill III | | X _____ | |

Freddie Mac Form 65 7/05

ITEM 7300L5 (0609)

Fannie Mae Form 1003 7/05
GreatDocs™
*(Page 5 of 5)*

# HUD/VA Addendum to Uniform Residential Loan Application

OMB Approval No. VA: 2900-0144
HUD: 2502-0059 (exp. 9/30/2007)

| Part I - Identifying Information (mark the type of application) | | 2. Agency Case No. (include any suffix) | 3. Lender's Case No. | 4. Section of the Act (for HUD cases) |
|---|---|---|---|---|
| 1. ☐ VA Application for Home Loan Guaranty | ☒ HUD/FHA Application for Insurance under the National Housing Act | 413-4685544-703 | 1936211 | 203(b) Basic Progra |

| 5. Borrower's Name & Present Address (include zip code) | 7. Loan Amount (include the UFMIP if for HUD or Funding Fee if for VA) | 8. Interest Rate | 9. Proposed Maturity |
|---|---|---|---|
| Clinton M. Hill III 851 E. Sandusky Ave Bellefontaine, OH 43311 | $ 134,995.00 | 6.8750 % | 30 yrs. 360 mos. |

| | 10. Discount Amount (only if borrower is permitted to pay) | 11. Amount of Up Front Premium | 12a. Amount of Monthly Premium | 12b. Term of Monthly Premium |
|---|---|---|---|---|
| | | $ 1,995.00 | $ 54.31 / mo. | 360 months |

| 6. Property Address (including name of subdivision, lot & block no. & zip code) | 13. Lender's I.D. Code | 14. Sponsor / Agent I.D. Code |
|---|---|---|
| 851 E. Sandusky Ave Bellefontaine OH 43311 | 1899800005 | 7499100008 |

| 15. Lender's Name & Address (include zip code) | 16. Name & Address of Sponsor / Agent |
|---|---|
| 1st Monarch Mortgage, LTD 1000 N Maple Street Marysville, OH 43040 | Taylor, Bean & Whiaker Mortgage Corp. 1417 North Magnolia Ave. Ocala, FL 34475 |
| | 17. Lender's Telephone Number |
| Type or Print all entries clearly | (937) 642-8100 |

**VA:** The veteran and the lender hereby apply to the Secretary of Veterans Affairs for Guaranty of the loan described here under Section 3710, Chapter 37, Title 38, United States Code, to the full extent permitted by the veteran's entitlement and severally agree that the Regulations promulgated pursuant to Chapter 37, and in effect on the date of the loan shall govern the rights, duties, and liabilities of the parties.

| 18. First Time Homebuyer? | 19. VA Only Title will be Vested in: | 20. Purpose of Loan (blocks 9 - 12 are for VA loans only) | |
|---|---|---|---|
| a. ☐ Yes | ☐ Veteran | 1) ☐ Purchase Existing Home Previously Occupied | 7) ☐ Construct Home (proceeds to be paid out during construction) |
| b. ☒ No | ☐ Veteran & Spouse | 2) ☐ Finance Improvements to Existing Property | 8) ☐ Finance Co-op Purchase |
| | ☐ Other (specify) | 3) ☒ Refinance (Refi.) | 9) ☐ Purchase Permanently Sited Manufactured Home |
| | | 4) ☐ Purchase New Condo. Unit | 10) ☐ Purchase Permanently Sited Manufactured Home & Lot |
| | | 5) ☐ Purchase Existing Condo. Unit | 11) ☐ Refi. Permanently Sited Manufactured Home to Buy Lot |
| | | 6) ☐ Purchase Existing Home Not Previously Occupied | 12) ☐ Refi. Permanently Sited Manufactured Home/Lot Loan |

## Part II - Lender's Certification

21. The undersigned lender makes the following certifications to induce the Department of Veterans Affairs to issue a certificate of commitment to guarantee the subject loan or a Loan Guaranty Certificate under Title 38, U.S. Code, or to induce the Department of Housing and Urban Development - Federal Housing Commissioner to issue a firm commitment for mortgage insurance or a Mortgage Insurance Certificate under the National Housing Act.

A. The loan terms furnished in the Uniform Residential Loan Application and this Addendum are true, accurate and complete.

B. The information contained in the Uniform Residential Loan Application and this Addendum was obtained directly from the borrower by an employee of the undersigned lender or its duly authorized agent and is true to the best of the lender's knowledge and belief.

C. The credit report submitted on the subject borrower (and co-borrower, if any) was ordered by the undersigned lender or its duly authorized agent directly from the credit bureau which prepared the report and was received directly from said credit bureau.

D. The verification of employment and verification of deposits were requested and received by the lender or its duly authorized agent without passing through the hands of any third persons and are true to the best of the lender's knowledge and belief.

Items "H" through "J" are to be completed as applicable for VA loans only.

E. The Uniform Residential Loan Application and this Addendum were signed by the borrower after all sections were completed.

F. The proposed loan to the named borrower meets the income and credit requirements of the governing law in the judgment of the undersigned.

G. To the best of my knowledge and belief, I and my firm and its principals: (1) are not presently debarred, suspended, proposed for debarment, declared ineligible, or voluntarily excluded from covered transactions by any Federal department or agency; (2) have not, within a three-year period preceding this proposal, been convicted of or had a civil judgment rendered against them for (a) commission of fraud or a criminal offense in connection with obtaining, attempting to obtain, or performing a public (Federal, State or local) transaction or contract under a public transaction; (b) violation of Federal or State antitrust statutes or commission of embezzlement, theft, forgery, bribery, falsification or destruction of records, making false statements, or receiving stolen property; (3) are not presently indicted for or otherwise criminally or civilly charged by a governmental entity (Federal, State or local) with commission of any of the offenses enumerated in paragraph G(2) of this certification; and (4) have not, within a three-year period preceding this application/proposal, had one or more public transactions (Federal, State or local) terminated for cause or default.

H. The names and functions of any duly authorized agents who developed on behalf of the lender any of the information or supporting credit data submitted are as follows:

| Name & Address | Function (e.g., obtained information on the Uniform Residential Loan Application, ordered credit report, verifications of employment, deposits, etc.) |
|---|---|
| | |

If no agent is shown above, the undersigned lender affirmatively certifies that all information and supporting credit data were obtained directly by the lender.

I. The undersigned lender understands and agrees that it is responsible for the omissions, errors, or acts of agents identified in item H as to the functions with which they are identified.

J. The proposed loan conforms otherwise with the applicable provisions of Title 38, U.S. Code, and of the regulations concerning guaranty or insurance of loans to veterans.

| Signature of Officer of Lender | Title of Officer of Lender | Date (mm/dd/yyyy) |
|---|---|---|
| | | |

**Part III - Notices to Borrowers.** Public reporting burden for this collection of information is estimated to average 6 minutes per response, including the time for reviewing instructions, searching existing data sources, gathering and maintaining the data needed, and completing and reviewing the collection of information. This agency may not conduct or sponsor, and a person is not required to respond to, a collection information unless that collection displays a valid OMB control number.

**Privacy Act Information.** The information requested on the Uniform Residential Loan Application and this Addendum is authorized by 38 U.S.C. 3710 (if for DVA) and 12 U.S.C. 1701 et seq. (if for HUD/FHA). The Debt Collection Act of 1982, Pub. Law 97-365, and HUD's Housing and Community Development Act of 1987, 42 U.S.C. 3543, require persons applying for a federally insured or guaranteed loan to furnish his/her social security number (SSN). You must provide all the requested information, including your SSN. HUD and/or VA may conduct a computer match to verify the information you provide. HUD and/or VA may disclose certain information to Federal, State and local agencies when relevant to civil, criminal, or regulatory investigations and prosecutions. It will not otherwise be disclosed or released outside of HUD or VA, except as required and permitted by law. The information will be used to determine whether you qualify

VA Form 26-1802a (3/98)
ITEM TOA001L1 (0506)

*(Page 1 of 4 pages)*

form HUD-92900-A (06/2005)
GreatDocs™
To Order Call: 1-800-968-5775


*0912051936211*

TOA001_20070712.100000

as a mortgagor. Any disclosure of information outside VA or HUD/FHA will be made only as permitted by law. Failure to provide any of the requested information, including SSN, may result in disapproval of your loan application. This is notice to you as required by the Right to Financial Privacy Act of 1978 that VA or HUD/FHA has a right of access to financial records held by financial institutions in connection with the consideration or administration of assistance to you. Financial records involving your transaction will be available to VA and HUD/FHA without further notice or authorization but will not be disclosed or released by this institution to another Government Agency or Department without your consent except as required or permitted by law.
**Caution.** Delinquencies, defaults, foreclosures and abuses of mortgage loans involving programs of the Federal Government can be costly and detrimental to your credit, now and in the future. The lender in this transaction, its agents and assigns as well as the Federal Government, its agencies, agents and assigns, are authorized to take any and all of the following actions in the event loan payments become delinquent on the mortgage loan described in the attached application: (1) Report your name and account information to a credit bureau; (2) Assess additional interest and penalty charges for the period of time that payment is not made; (3) Assess charges to cover additional administrative costs incurred by the Government to service your account; (4) Offset amounts owed to you under other Federal programs; (5) Refer your account to a private attorney, collection agency or mortgage servicing agency to collect the amount due, foreclose the mortgage, sell the property and seek judgment against you for any deficiency; (6) Refer your account to the Department of Justice for litigation in the courts; (7) If you are a current or retired Federal employee, take action to offset your salary, or civil service retirement benefits; (8) Refer your debt to the Internal Revenue Service for offset against any amount owed to you as an income tax refund; and (9) Report any resulting written-off debt of yours to the Internal Revenue Service as your taxable income. All of these actions can and will be used to recover any debts owed when it is determined to be in the interest of the lender and/or the Federal Government to do so.

**Part IV - Borrower Consent for Social Security Administration to Verify Social Security Number**

I authorize the Social Security Administration to verify my Social Security number to the Lender identified in this document and HUD/FHA, through a computer match conducted by HUD/FHA.
I understand that my consent allows no additional information from my Social Security records to be provided to the Lender, and HUD/FHA and that verification of my Social Security number does not constitute confirmation of my identity. I also understand that my Social Security number may not be used for any other purpose than the one stated above, including resale or rediscosure to other parties. The only other rediscosure permitted by this authorization is for review purposes to ensure that HUD/FHA complies with SSA's consent requirements.
I am the individual to whom the Social Security number was issued or that person's legal guardian. I declare and affirm under the penalty of perjury that the information contained herein is true and correct. I know that if I make any representation that I know is false to obtain information from Social Security records, I could be punished by a fine or imprisonment or both.
This consent is valid for 180 days from the date signed, unless indicated otherwise by the individual(s) named in this loan application.

| Signature(s) of Borrower(s) - Read consent carefully. Review accuracy of social security number(s) and birth dates provided on this application. | Date signed |
|---|---|

**Part V - Borrower Certification**

**22. Complete the following for a HUD/FHA Mortgage.**

| | | Is it to be sold? | 22b. Sales Price | 22c. Original Mortgage Amt |
|---|---|---|---|---|
| 22a. Do you own or have you sold other real estate within the past 60 months on which there was a HUD/FHA mortgage? | Yes [X] No | Yes [X] No | $ 0.00 | $ 0.00 |

22d. Address

22e. If the dwelling to be covered by this mortgage is to be rented, is it a part of, adjacent or contiguous to any project subdivision or group of concentrated rental properties involving eight or more dwelling units in which you have any financial interest? Yes [ ] No [ ] If "Yes" give details.

22f. Do you own more than four dwellings ? Yes [ ] No [X] If "Yes" submit form HUD-92561.

**23. Complete for VA-Guaranteed Mortgage.** Have you ever had a VA home Loan? Yes [ ] No [X]

**24. Applicable for Both VA & HUD.** As a home loan borrower, you will be legally obligated to make the mortgage payments called for by your mortgage loan contract. The fact that you dispose of your property after the loan has been made will **not relieve you of liability for making these payments. Payment of the loan in full is ordinarily the way liability on a mortgage note is ended.** Some home buyers have the mistaken impression that if they sell their homes when they move to another locality, or dispose of it for any other reasons, they are no longer liable for the mortgage payments and that liability for these payments is solely that of the new owners. Even though the new owners may agree in writing to assume liability for your mortgage payments, this assumption agreement will not relieve you from liability to the holder of the note which you signed when you obtained the loan to buy the property. **Unless you are able to sell the property to a buyer who is acceptable to VA or to HUD/FHA and who will assume the payment of your obligation to the lender, you will not be relieved from liability to repay any claim which VA or HUD/FHA may be required to pay your lender on account of default in your loan payments. The amount of any such claim payment will be a debt owed by you to the Federal Government.** This debt will be the object of established collection procedures.

**25. I, the Undersigned Borrower(s) Certify that:**

(1) I have read and understand the foregoing concerning my liability on the loan and Part III Notices to Borrowers.

(2) Occupancy - (For VA only -- mark the applicable box)

[ ] **(a)** I now actually occupy the above-described property as my home or intend to move into and occupy said property as my home within a reasonable period of time or intend to reoccupy it after the completion of major alterations, repairs or improvements.

[ ] **(b)** My spouse is on active military duty and in his or her absence, I occupy or intend to occupy the property securing this loan as my home

[ ] **(c)** I previously occupied the property securing this loan as my home. (for interest rate reductions)

[ ] **(d)** While my spouse was on active military duty and unable to occupy the property securing this loan, I previously occupied the property that is securing this loan as my home. (for interest rate reduction loans)
**Note:** If box 2b or 2d is checked, the veteran's spouse must also sign below.

(3) Mark the applicable box (not applicable for Home Improvement or Refinancing Loan) I have been informed that ($0.00       ) is:

[ ] the reasonable value of the property as determined by VA or;

[X] the statement of appraised value as determined by HUD / FHA.
**Note:** If the contract price or cost exceeds the VA "Reasonable Value" or HUD/FHA "Statement of Appraised Value", mark either item (a) or item (b), whichever is applicable.

[ ] **(a)** I was aware of this valuation when I signed my contract and I have paid or will pay in cash from my own resources at or prior to loan closing a sum equal to the

difference between the contract purchase price or cost and the VA or HUD/FHA established value. I do not and will not have outstanding after loan closing any unpaid contractual obligation on account of such cash payment;

[X] **(b)** I was not aware of this valuation when I signed my contract but have elected to complete the transaction at the contract purchase price or cost. I have paid or will pay in cash from my own resources at or prior to loan closing a sum equal to the difference between contract purchase price or cost and the VA or HUD/FHA established value. I do not and will not have outstanding after loan closing any unpaid contractual obligation on account of such cash payment.

(4) Neither I, nor anyone authorized to act for me, will refuse to sell or rent, after the making of a bona fide offer, or refuse to negotiate for the sale or rental of, or otherwise make unavailable or deny the dwelling or property covered by his/her loan to any person because of race, color, religion, sex, handicap, familial status or national origin. I recognize that any restrictive covenant on this property relating to race, color, religion, sex, handicap, familial status or national origin is illegal and void and civil action for preventive relief may be brought by the Attorney General of the United States in any appropriate U.S. District Court against any person responsible for the violation of the applicable law.

(5) All information in this application is given for the purpose of obtaining a loan to be insured under the National Housing Act or guaranteed by the Department of Veterans Affairs and the information in the Uniform Residential Loan Application and this Addendum is true and complete to the best of my knowledge and belief. Verification may be obtained from any source named herein.

(6) For HUD Only (for properties constructed prior to 1978 ) I have received information on lead paint poisoning. Yes [ ] Not Applicable [X]

(7) I am aware that neither HUD / FHA nor VA warrants the condition or value of the property

| Signature(s) of Borrower(s) -- Do not sign unless this application is fully completed. Read the certifications carefully & review accuracy of this application. | Date |
|---|---|

Federal statutes provide severe penalties for any fraud, intentional misrepresentation, or criminal connivance or conspiracy purposed to influence the issuance of any guaranty or insurance by the VA Secretary or the HUD/FHA Commissioner.

# Direct Endorsement Approval for a HUD/FHA-Insured Mortgage

**U.S. Department of Housing and Urban Development**

**Part I - Identifying Information** (mark the type of application)

| 1. | ☒ HUD/FHA Application for Insurance under the National Housing Act | 2. Agency Case No. (include any suffix) 413-4685544-703 | 3. Lender's Case No. 1936211 | 4. Section of the Act (for HUD cases) 203(b) Basic Progra |
|---|---|---|---|---|

5. Borrower's Name & Present Address (include zip code)
**Clinton M. Hill III**
**851 E. Sandusky Ave**
**Bellefontaine, OH 43311**

| 7. Loan Amount (include the UFMIP) $134,995.00 | 8. Interest Rate 6.8750 % | 9. Proposed Maturity 30 yrs. 360 mos. |
|---|---|---|

| 10. Discount Amount (only if borrower is permitted to pay) | 11. Amount of Up Front Premium $ 1,995.00 | 12a. Amount of Monthly Premium $ 54.31 / mo. | 12b. Term of Monthly Premium 360 months |
|---|---|---|---|

6. Property Address (including name of subdivision, lot & block no. & zip code)
**851 E. Sandusky Ave., Bellefontaine, OH 43311**

| 13. Lender's I.D. Code 1899800005 | 14. Sponsor / Agent I.D. Code 7499100008 |
|---|---|

15. Lender's Name & Address (include zip code)

**1st Monarch Mortgage, LTD**
**1000 N Maple Street**
**Marysville, OH 43040**

16. Name & Address of Sponsor / Agent

**Taylor, Bean & Whitaker Mortgage Corp.**
**1417 North Magnolia Ave.**
**Ocala, FL 34475**

17. Lender's Telephone Number
**(937) 642-8100**

Type or Print all entries clearly

| ☒ | Approved: Approved subject to the additional conditions stated below, if any. | | |
|---|---|---|---|
| | Date Mortgage Approved **August 08, 2007** | Date Approval Expires | **October 30, 2007** |

| ☐ | Modified & Approved as follows: | Loan Amount (include UFMIP) $ | Interest Rate 6.8750 % | Proposed Maturity Yrs. 360 Mos | Monthly Payment $ | Amount of Up Front Premium $ | Amount of Monthly Premium $ | Term of Monthly Premium months |
|---|---|---|---|---|---|---|---|---|

**Additional Conditions:**

☐ If this is proposed construction, the builder has certified compliance with HUD requirements on form HUD-92541.

☐ If this is new construction, the lender certifies that the property is 100% complete (both on site and off site improvements) **and** the property meets HUD's minimum property standards and local building codes.

☐ Form HUD-92544, Builder's Warranty is required.

☐ The property has a 10-year warranty.

☐ Owner-Occupancy **Not** required (item (b) of the Borrower's Certificate does not apply).

☐ The mortgage is a high loan-to-value ratio for non-occupant mortgagor in military.

☐ Other: (specify)

☐ This mortgage was rated as an "accept" or "approve" by FHA's Total Mortgage Scorecard. As such, the undersigned representative of the mortgagee certifies to the integrity of the data supplied by the lender used to determine the quality of the loan, that a Direct Endorsement Underwriter reviewed the appraisal (if applicable) and further certifies that this mortgage is eligible for HUD mortgage insurance under the Direct Endorsement program. I hereby make all certifications required for this mortgage as set forth in HUD Handbook 4000.4

Mortgagee Representative _____

☒ This mortgage was rated as a "refer" by a FHA's Total Mortgage Scorecard, and/or was manually underwritten by a Direct Endorsement underwriter. As such, the undersigned Direct Endorsement underwriter certifies that I have personally reviewed the appraisal report (if applicable), credit application, and all associated documents and have used due diligence in underwriting this mortgage. I find that this mortgage is eligible for HUD mortgage insurance under the Direct Endorsement program and I hereby make all certifications required for this mortgage as set forth in HUD Handbook 4000.4

Direct Endorsement Underwriter **Karina Batkalin** _____ DE's CHUMS ID Number **BU78** _____

**The Mortgagee, its owners, officers, employees or directors ☐ do  ☒ do not have a financial interest in or a relationship, by affiliation or ownership, with the builder or seller involved in this transaction.**

form HUD-92900-A (06/2005)
GreatDocs ™
To Order Call: 1-800-968-5775

**Borrower's Certificate:**

The undersigned certifies that:

(a) I will not have outstanding any other unpaid obligations contracted in connection with the mortgage transaction or the purchase of the said property except obligations which are secured by property or collateral owned by me independently of the said mortgaged property, or obligations approved by the Commissioner;

(b) One of the undersigned intends to occupy the subject property, (note: this item does not apply if owner-occupancy is not required by the commitment);

(c) All charges and fees collected from me as shown in the settlement statement have been paid by my own funds, and no other charges have been or will be paid by me in respect to this transaction;

(d) Neither I, nor anyone authorized to act for me, will refuse to sell or rent, after the making of a bona fide offer, or refuse to negotiate for the sale or rental of or otherwise make unavailable or deny the dwelling or property covered by this loan to any person because of race, color, religion, sex, handicap, familial status or national origin. I recognize that any restrictive covenant on this property relating to race, color, religion, sex, handicap, familial status or national origin is illegal and void and any such covenant is hereby specifically disclaimed. I understand that civil action for preventative relief may be brought by the Attorney General of the United States in any appropriate U.S. District Court against any person responsible for a violation of this certificate.

---

Borrower'(s) Signature(s) & Date

---

Clinton M. Hill III

**Lender's Certificate:**

The undersigned certifies that to the best of its knowledge:

(a) The statements made in its application for insurance and in this Certificate are true and correct;

(b) The conditions listed above or appearing in any outstanding commitment issued under the above case number have been fulfilled;

(c) Complete disbursement of the loan has been made to the borrower, or to his/her creditors for his/her account and with his/her consent;

(d) The security instrument has been recorded and is a good and valid first lien on the property described;

(e) No charge has been made to or paid by the borrower except as permitted under HUD regulations;

(f) The copies of the credit and security instruments which are submitted herewith are true and exact copies as executed and filed for record;

(g) It has not paid any kickbacks, fee or consideration of any type, directly or indirectly, to any party in connection with this transaction except as permitted under HUD regulations and administrative instructions.

I, the undersigned, as authorized representative of **Taylor, Bean & Whitaker Mortgage Corp.**

mortgagee at this time of closing of this mortgage loan, certify that I have personally reviewed the mortgage loan documents, closing statements, application for insurance endorsement, and all accompanying documents. I hereby make all certifications required for this mortgage as set forth in HUD Handbook 4000.4.

| Lender's Name | | |
|---|---|---|
| **Taylor, Bean & Whitaker Mortgage Corp.** | Note: If the approval is executed by an agent in the name of lender, the agent must enter the lender's code number and type. | |
| Title of Lender's Officer | | |
| Signature of Lender's Officer | Date | Code Number (5 digits)  **18998** | Type |



# *ACS Lionheart Title*
### 111 W. Sixth Street
### Marysville, Ohio 43040

**Jeffery M. Holtschulte, Esq.**
**Licensed Agent**

**Phone 937-644-3172**
**Fax 937-644-3517**
**e-mail - lionheart@midohio.net**

August 21, 2007

HomeEq Servicing
Attn: Payoff Processing
4837 Watt Avenue, Suite 200
North Highlands CA 95660

Re: Clinton Hill & Teresa Hill
Property: 851 Sandusky Ave. Bellefontaine  OH 43311
Loan Number 0000005546044
Logan County Ohio Official Records Vol. 487 page 541*

Dear Lender:

Enclosed is a check in full payment of the loan identified above per the enclosed statement received from your office.  Ohio Bar Title Insurance Company, through its agent ACS Lionheart Title, and the customer require you to satisfy and release of record the mortgage referred to above.

You are also directed to freeze this loan account and close this line of credit, if any, immediately, making no further advances to the customer to be secured by the above subject mortgage.  Please forward recorded cancellation documents to your customer at the address below and any other correspondence to this office.

Sincerely,

Jeffery M. Holtschulte

* Open-end Mortgage from Clinton Hill and Teresa Hill, husband and wife, to Homeowners Loan Corp., dated March 9, 2001, recorded March 15, 2001, Logan County Ohio Official Record Vol. 487 page 541, securing the principal sum of $115,000.00.

HomEq       8/2/2007 5:38 AM   PAGE   2/005   Fax Server

**HomEq Servicing**
Post Office Box 13716
Sacramento, CA 95853
4837 Watt Avenue, Suite 200
North Highlands, CA 95660

# HomEq
# Servicing

```
***********************************************
* Please contact Customer Service by calling 1-877-867-7378 with any    *
* questions concerning the payoff statement. Interest will accrue until  *
* the FULL AMOUNT is received. Please refer to the stipulation page for  *
* additional information and instructions.                               *
***********************************************
```

August 02, 2007

No zip code!
1st Monarch Mtg

Mortgagor Information
Clinton Hill
Teresa Hill
851 EAST SANDUSKY AVE Bellefontaine OH
43311

Payoff Requestor
1st Monarch Mtg

Loan Information
Loan Number :     0000005546044
Loan Type:      13 - Conventional Residential Without Pmi
Case/Sec Num :

Property Address
851 E SANDUSKY AVE Bellefontaine OH 43311

This payoff statement expires and becomes void upon generation of a revised payoff statement or until 08/30/2007, whichever occurs first. A revised payoff statement will always supercede a previously generated payoff statement, as it will contain the most current and accurate information. If you are unable to remit full payoff funds by the above date, you will need to call 1-877-867-7378 and request a new payoff statement

HomEq reserves the right to return any funds received for the intention of payment in full, and/or not process the funds as a payoff of the account if the funds received are NOT SUFFICIENT to pay the account in full. Interest will continue to accrue on your account until the full amount is received. Examples of reasons for return of funds and/or not processing funds received as payment in full include, but are not limited to unintentional, error in calculation of the payoff amount, previously applied invalid payments that are reversed off the account, and/or disbursements* or adjustments made after the generation of this payoff statement but prior to the receipt of the amount of funds required to pay the account in full.

The payoff itemization amounts below are subject to final verification upon receipt of funds by HomEq. HomEq reserves the right to revise these amounts. Interest will continue to accrue and your payment will remain due until sufficient funds are received to pay the account in full.

| | |
|---|---|
| The Current Total Unpaid Principal Balance | $110,190.92 |
| Interest At 10.8% | $554.27 |
| Escrow Overdraft | $1,999.33 |
| Less: Suspense Balance | $681.37 |
| Court Approved Fees | $150.00 |
| Recording Fees | $32.00 |
| Late Charges | $243.01 |

**Total Amount To Pay This Account In FULL**          **$112,488.16**

The next regular payment is due on 09/14/2007. As of the date of this letter, the per diem interest amount is $32.60. To insure timely processing of payments in full, we encourage you to remit the Total Amount shown above. Please ensure NO stop payments are placed on the most recent monthly payment that has been previously applied to the account by HomEq. Issuance of this statement does not suspend the contract requirement to make the mortgage payments when due. **A late charge of $0.00 will be assessed 15 days after a current payment due is not paid, and should be added to the payoff total if payoff will be received after that time.**

*The current escrow balance is ($1,999.33). If a disbursement for taxes or insurance takes place prior to the receipt of funds for payoff, and the escrow balance is not sufficient to satisfy the disbursement amount, HomEq will advance the funds to pay the amount due thereby creating an escrow advance. When this occurs, these payoff figures will no longer be valid and you will owe HomEq additional funds for the escrow advance and a revised payoff statement will be generated.

## PERSONAL AND FINANCIAL INFORMATION PRIVACY RELEASE

WHEREAS, Clinton M. Hill III  (Buyer/~~Seller~~/Borrower) has requested Jeffery M. Holtschulte, attorney, dba ACS Lionheart Title (the "Settlement Agent") to provide closing and/or escrow services in connection with the purchase and sale or refinance (sometimes referred to as the "Transaction") of real estate commonly known as 851 Sandusky Ave. Bellefontaine OH 43311 (the "Property"); and

WHEREAS, in order to allow for a more efficient closing, Buyer/~~Seller~~/Borrower desires to release Settlement Agent from restrictions on sharing such information with other parties involved in the Transaction.

NOW, THEREFORE, Buyer/~~Seller~~/Borrower agrees as follows:

Buyer/~~Seller~~/Borrower acknowledges the following:

1.   That, as part of preparing for the closing and/or escrow, Settlement Agent will be obtaining certain personal financial information of the Buyer/~~Seller~~/Borrower and that such information is necessary in order for the closing of the purchase and sale or refinance of the Property to be completed.

2.   That, pursuant to the Financial Services Modernization Act (a/k/a the Graham-Leach-Bliley Act), certain nonpublic personal and financial information must be kept confidential and may not be disclosed to any third parties by Settlement Agent.

3.   That, in order for Settlement Agent to efficiently and effectively provide the closing and/or escrow services requested, certain items of nonpublic personal and financial information must be disclosed to other parties or service providers involved in the Transaction.

Buyer/~~Seller~~/Borrower hereby allows Settlement Agent to share the personal and financial information of Buyer/Seller/Borrower with any other party or service provider involved in the Transaction, but only as necessary.

Furthermore, Buyer/~~Seller~~/Borrower releases and holds harmless Settlement Agent from the obligations imposed on Settlement Agent with respect to Buyer/Seller/Borrower's personal and financial information by the Financial Services Modernization Act.

Buyer/~~Seller~~/Borrower releases and holds harmless Settlement Agent from any liability with respect to the sharing of Buyer/Seller/Borrower's personal and financial information with other parties and/or service providers involved in the Transaction.

IN WITNESS WHEREOF, Buyer/~~Seller~~/Borrower has executed this Personal and Financial Information Privacy Release this _21____ day of _August_____ 2007.

Buyer/~~Seller~~/Borrower:

_____          _____
Clinton M. Hill III

Form CP-24.1

# NOTICE OF AVAILABILITY AND OFFER
# OF CLOSING PROTECTION COVERAGE

❑ Seller: _____

❑ Buyer: _____

❑ Borrower: __**Clinton M. Hill III**_____

❑ Lender: _____

Re:    Licensed Agent: ACS Lionheart Title, Jeffery M. Holtschulte
       Premises: 851 Sandusky Ave., Bellefontaine OH 43311
       Commitment/File No.: 070803

## Notice of Availability of Closing Protection Coverage

Pursuant to Ohio Revised Code Section 3953.32, you are hereby notified of the availability of Closing Protection Coverage in connection with the above-referenced transaction for the premium stated in the Offer of Closing Protection Coverage outlined below.

Closing or settlement of a real estate and/or mortgage loan transaction can be characterized as having two components. One component pertains to the title of the Premises and the title insurance policy therefor. The other component pertains to the handling of funds and documents by the Licensed Agent. A title insurance policy **does not** cover losses due to the mishandling of funds or documents by the Licensed Agent. However, Closing Protection Coverage, as outlined below, **does** provide such protection.

Description of Coverage: The Closing Protection Coverage indemnifies you against the loss of settlement funds resulting from any of the following acts of the Licensed Agent or anyone acting on behalf of the Licensed Agent, subject to certain conditions and exclusions specified in the Closing Protection Coverage Form:

(1) Theft, misappropriation, fraud, or any other failure to properly disburse settlement, closing or escrow funds; and

(2) Failure to comply with any applicable written closing instructions, when agreed to by the Licensed Agent.

You are covered by a Closing Protection Coverage Form only if it is specifically addressed to you. A copy of the Closing Protection Coverage Form is available upon request.